J. MILLER et al., Appellees, v. INCORPORATED TOWN OF MILFORD et al., Appellants.

No. 43962.

754

DECEMBER 14, 1937.

REHEARING DENIED APRIL 8, 1938.

Geo. A. Rice and W. L. Hassett, for appellants.

C. J. Lynch and H. E. Nary, for appellees.

STIGER, J.—Prior to 1930, the town of Milford and its inhabitants had been receiving electric service from the Iowa Public Service Company which held a general franchise expiring in October, 1933. On September 11, 1928, the town and company entered into a written contract for lighting the streets of Milford. The term of the agreement was for a period of five years, from July 1, 1928, and for five-year periods thereafter until canceled by a sixty-day written notice by either party to the other prior to the end of the term or any fifth anniversary of the effective date of the agreement. On February 21, 1930, the Iowa Public Service Company sold and transferred to the Northwestern Light & Power Company the general franchise, distribution, and street lighting system and all equipment and property devoted to furnishing electric service in the town of Milford, and also transferred as a part of the sale the said street lighting contract.

Neither party to the contract gave notice of cancellation

prior to July 1, 1933, so the contract remained in full force and effect until at least July 1, 1938.

One of the contentions of the defendants is, that as the franchise expired in October, 1933, the Northwestern Light & Power Company had no further right to use and occupy the streets and maintain its equipment and property thereon, and therefore the street lighting contract became void.

On February 1, 1934, the town voted to establish a municipal light and power plant to be paid for out of the future earnings of the plant as provided for by Code section 6134-d1. On February 28, 1934, the town of Milford entered into a written contract with the Monroe Electric Company, one of the defendants in this case, for the construction of the plant. The title to the plant remained in the Monroe Electric Company to secure the contract. In July, 1934, this suit was commenced. In June, 1934, the Northwestern Light & Power Company brought an action against the same persons who are defendants in this case in the federal court which sought substantially the same relief against the defendants as prayed for in the case at bar.

Another claim of the defendants here is that the decree in the federal case adjudicated all the issues in the case at bar adversely to the plaintiffs.

The plaintiffs, as citizens, property owners, taxpayers and users of electric current, brought this suit in their own behalf and on the behalf of all other residents of Milford in said classes in which they sought a judgment and decree finding and adjudicating that: (a) A contract between the defendant town and Monroe Electric Company for the construction of a municipal electric lighting plant is void, and restraining the making of any payments thereunder and the doing of any further acts in performance thereof, including the restraining of the town from operating the plant and restraining Monroe Electric Company from transferring or .collecting the revenue bonds; (b) that the street-lighting contract held by Northwestern Light & Power Company with the town is in full force and effect, and restraining the town from breaching said contract and from cutting off the service thereunder, and from removing the structures, equipment, and appliances on the streets and public places here maintained in the performance of said contract, and restraining the defendants from .interfering with the system of

the said company; (c) that the plaintiffs are entitled to receive the electric service they are now enjoying, and restraining the town and its officers from cutting the wires furnishing said service and from interfering with the distribution system of the said company.

The answer of defendants stated in substance:

"Plaintiffs are not proper parties, have shown no damage, have no rights to protect, and are not entitled to an injunction; that the franchise of the Northwestern Light & Power Company in the Town of Milford having expired in October, 1933, and said Company having been notified to discontinue electric service in the Town of Milford and to remove its equipment from the streets and alleys, is maintaining a nuisance upon said streets and alleys; that the plaintiffs are not parties to the street lighting contract and have no rights thereunder; that the street lighting contract is void and not binding on the parties; that all of the issues raised by the plaintiffs, and especially all issues relative to the validity of the contract between the Town of Milford and the Monroe Electric Company for the construction of the municipal electric light plant being relative to a public question, have been adjudicated and determined in a prior and former action in the Federal Court, and that the findings and decree of the Federal Court on a public question are binding on all parties; that the contract for the construction of the municipal electric light plant is valid and that competitive bidding was had; that by reason of the fact that the contract for the construction of the plant having been completed, said plant accepted by the Town and the revenue bonds issued and delivered in payment thereof, the question of whether or not said construction contract is void was academic and moot."

Before the trial of the case commenced, the trial court sustained plaintiffs' motion to dismiss division two of the defendants' answer which pleaded that the judgment and decree in the federal case adjudicated all of the matters alleged in plaintiffs' petition adversely to the plaintiffs. At the conclusion of the trial, a decree was entered which found that the contract between the town and Monroe Electric Company for the construction of the plant was entered into without competitive bidding, and was not responsive to the invitation to bidders and extended to the company rights and privileges not within the

purview of the call, and that the contract was illegal and void, and restrained the defendants from proceeding further in the performance of the contract, from operating the plant, and from making any payment upon the bonds issued for the purchase price, and from doing any acts pursuant to the contract; that the contract between the town and Northwestern Light & Power Company was valid and that the execution of the street lighting contract was not the granting of a franchise, and that the plaintiffs had a right to have street lighting service furnished under said contract, and restrained the defendants from interfering with or disturbing the property of the power company and from interfering with the furnishing of street lighting service under said contract.

I. In paragraph 9, division 2 of the answer, the defendants pleaded res adjudicata, alleging that all of the several causes of action contained in the pleadings of the plaintiffs have been fully adjudicated in the case of Northwestern Light & Power Company v. Town of Milford, Iowa, 82 Fed., 2d 45, 47, decided March 19, 1936, in the United States Court of Appeals, and that such adjudication resulted in a denial of the relief demanded by the plaintiffs which included the very matters involved in this action. The plaintiffs moved to strike said paragraph 9. (1) There is not an identity of parties; (2) the action in the federal court was not a class action but was brought and maintained by the Northwestern Light & Power Company in its individual capacity; (3) that the judgment and decree was not on the merits of the case. The trial court sustained the motion and appellants maintain that this ruling constituted error.

On June 29, 1934, the Northwestern Light & Power Company brought a suit in equity as a taxpayer in the town of Milford in the federal court against the same persons who are defendants in the case at bar to enjoin them from carrying out the contract between the town of Milford and Monroe Electric Company for the erection of the municipal plant on the ground that the contract was illegal, and also alleged that the town proposes to breach plaintiffs' street lighting contract with the town, and that plaintiffs are entitled to the use of the streets in Milford in order to carry out its street lighting contract. The bill of complaint is substantially the same as in the instant case which was commenced about one month later. The court found

generally for defendants and dismissed the case on its merits. An appeal was taken to the United States Circuit Court of Appeals. The appellate court affirmed the decision of the district court and dismissed the petition for the following reasons:

(1) The Northwestern Light & Power Company, being without a franchise, was not in position to attack the contract.

(2) The Northwestern Light & Power Company, as a taxpayer, was not interested in the contract as it was not payable out of taxation.

(3) That in any event the contract had been fully performed and the question of the validity of the contract was moot.

The court further stated:

"A breach of the contract would give to the plaintiff a cause of action at law for damages. The amount which the plaintiff would be entitled to recover in case of a breach would be readily ascertainable. Under the circumstances, a suit in equity for an injunction to restrain a breach would not lie. * * *

"The asserted rights of the plaintiff to occupy the streets of the town for the purpose of carrying out its contract for street lighting, or for any other purpose, can be determined in the quo warranto proceedings which are now pending in the court below. This is an additional reason for not determining, in this equity suit, the rights of the parties to the street lighting contract, or whether by virtue of that contract or for any other reason the plaintiff may lawfully continue to occupy the streets of the town."

After observing that the municipal plant had been completed and accepted by the town prior to the submission of the case, the court stated with reference to the question of the illegality of the contract being moot:

"This court will not direct the issuance of an injunction to prohibit the doing of things which have already been done. * * * This disposes of so much of the appeal as relates to the failure of the lower court to declare the contract for the erection of the municipal plant illegal and void and to enjoin its performance. The question whether the contract was illegal has now become academic."

The appellate court did not, in fact, affirm the decree of

the Federal District Court but remanded the case with directions for entering a decree dismissing the bill for the reasons stated in the opinion.

On May 2, 1936, the appellate court, on petition for rehearing, rendered the following supplemental opinion in the case which is found in 82 Fed. 2d, 1023 :

"In its petition for rehearing the appellant asserts that a taxpayer may maintain a suit to enjoin the performance of a contract by a town for the erection of a municipal electric plant, although it is to be paid for from earnings, and not from taxes. The question which we passed upon was whether the plaintiff, a Delaware corporation with an expired franchise, a nonresident and noncitizen of the town of Milford, and not even a prospective customer of the Municipal electric plant, might maintain this suit. The broad question whether a citizen and taxpayer of a town may ever maintain such a suit was not before us and was not decided.

"The appellant also asserts that, since the court below dismissed the suit upon its merits, the decree should not be affirmed. The mandate of this court will be that the court below enter a decree dismissing the bill for the reasons stated in our opinion. In all other respects, the petition for rehearing is denied."

On May 20, 1936, the following order was entered in the Federal District Court:

"In conformity to a mandate of the United States Circuit Court of Appeals of the Eighth Circuit dated May 2, 1936 ;

"It is hereby ordered, adjudged, and decreed that the decree of this court in this suit entered on the 6th day of June, 1935, be and the same is hereby vacated, set aside, and held for naught; and the bill of complaint is dismissed, for the reason stated in the opinion of the said United States Circuit Court of Appeals of the date March 19, 1936, and May 2, 1936, in this suit."

 It will be noticed that the supplemental opinion·of the appellate court, instead of affirming the decree below which dismissed the suit on its merits, modified the opinion and directed that a decree be entered in the lower court dismissing the bill for the reasons stated in the opinion. Resort must be had to the judgment and not the pleadings in the appellate court to deter-

mine the matters litigated and adjudicated. The opinion did not pass on the validity of the contract, nor on the right of a citizen to question the validity of the contract and restrain the operation of a plant erected under a contract alleged to be illegal and void.

■■■ The Northwestern Light & Power Company did not bring the suit on its own behalf and on behalf of the citizens and users of electricity in the town of Milford. It brought the suit solely on its own behalf to protect its individual rights under the contract with the town. The fact that it alleged it was a taxpayer does not change the situation. The payment for the plant was to be made from the earnings as provided by Code section 6134-d1, and a taxpayer though a citizen, could not enjoin its performance because no burden was imposed upon the taxpayers. Neither the general rule that if a citizen and taxpayer brings a suit on behalf of himself and other taxpayers, every citizen is regarded as a party to the proceeding and bound by the judgment, 15 R. C. L. 1035, section 510, nor the rule that a judgment for or against a municipality or county involving a matter of public interest to all the people thereof is binding on citizens though not made parties is applicable. See Clark v. Wolf, 29 Iowa 197; Lee v. School District, 149 Iowa 345, 128 N. W. 533, 37 L. R. A. (N. S.) 383. No judgment on the merits was rendered in the Federal suit.

■■■ The plaintiffs in the case at bar are limited only by the issues actually decided in the federal case. Though the federal court held that it would not enjoin the doing of things already done, and therefore there was no occasion for considering the question of the validity of the contract, such holding will not estop or prevent citizens and users of electricity from commencing a suit to enjoin the operation of a plant erected under a contract alleged to be illegal and void. It cannot be said that because in a given case taxpayers cannot institute proceedings, citizens of a town cannot, as such, seek relief from the illegal, void contract of their representatives. If they could not institute such proceedings, the council would be a law unto itself and substantially immune from all restraint. The trial court was right in sustaining plaintiffs' motion to strike.

■■■ II. Appellants predicate error on the ruling of the trial court that the contract between the town and Monroe Electric Company was not let on competitive bidding because the

bid of the company was not responsive to the call, and the contract extended to the company rights and privileges which were not within the purview of that part of the call which provided that the work must be commenced on or before July 1, 1934, and be completed on or before November 1, 1934. The notice of public hearing and call for bids contained the following provisions material to this issue:

"That the Council of the Town of Milford, Dickinson County, State of Iowa, will meet at the Town Hall on the 28th day of May, 1934, at 2:00 o'clock P. M., at which time and place the Council does propose to adopt plans and specifications, and *form of contract,* for the establishment and construction of a municipal electric light and power plant, and to purchase machinery, equipment and apparatus therefor at a maximum expenditure of $70,000.00, consisting of the following items, *all in accordance with proposed plans and specifications* now on file with the Town Clerk.

"Such work shall commence on or before the 1st day of July, 1934, and shall be completed on or before the 1st day of November, 1934.

"At such hearing the Council will consider the plans and specifications now on file in the office of the Town Clerk, reference to which is made for a more detailed and complete description of the proposed improvement.

"At such hearing the Council will also consider the proposed form of contract in connection therewith, also all offers, bids or propositions *submitted in connection therewith."*

The plans and specifications contained the following references to the proposed form of contract and the time of completion of the work.

"Contract: Each bidder shall be prepared to enter into written contract with the Town of Milford, Iowa and furnish bond required within fourteen (14) days following notification of acceptance of his bid by the Town. Failure to comply with this provision shall cause forfeiture of certified check and proceeds thereof to the Town.

"Form of Contract: The form of contract to be entered into by and between the Town of Milford and the successful bidder shall be in substantial accordance with the one now on

file in the office of the Town Clerk of Milford, Iowa for this purpose.

"TIME OF COMPLETION: The contractor shall start work within 21 days after the award of the contract, and shall complete the work *within the time specified in the contract.* Delays, from causes beyond the control of the contractor, shall entitle him to a reasonable extension of time in which to complete the work. The contractor shall make request of the Town for extension of time, stating the reasons therefor, and no extension will be valid unless allowed by the Town in writing."

The contract contained the following exception to the requirement of the call as to time for performance:

"In the event of any suit, action, or other legal proceedings in which the legality or validity of this contract or of the proceedings preliminary to and authorizing the same shall in any manner be brought in question, shall be filed or pending, the time for commencement or completion, of delivery and installation of said machinery and equipment shall be extended during the period while said suit, action or other proceedings shall be pending and until the same shall be finally adjudicated and the Company shall not be required to begin or resume delivery, erection and installation until such final adjudication, nor shall the Company be liable for any damage due to the delay caused by cessation of work while such litigation is pending or until such final adjudication."

Appellees rely on the case of Brutsche v. Town of Coon Rapids, 220 Iowa 1295, 264 N. W. 696, to sustain the finding and decree of the trial court that the contract with the Monroe Electric Company was illegal and void because entered into without competitive bidding and not being responsive to the call and extended to the company rights and privileges not within the purview of the call.

It is the established law of this state that the bid and contract must respond to the invitation to bidders. Otherwise, the purported bid would not amount to a bid but to a counterproposal. Urbany v. City of Carroll, 176 Iowa 217, 157 N. W. 852. In the Town of Coon Rapids case, the call for bids and the specifications provided that the work was to be commenced within 30 days after the making of the contract and completed

within 180 days from the execution of the contract, subject only to unavoidable delay. The bid and contract contained the same provision for an extension of time for completing the work in the event of litigation as found in the contract in this case. In the Coon Rapids case it does not appear that the proposed form of contract was a part of the plans and specifications or notice to bidders. All the bids in that case were with reference to the requirement that the contract be performed within 180 days, subject only to unavoidable delay, and the provision in the contract for extension of time in case of litigation gave to the successful bidder rights and privileges not within the purview of the call. In the City of Carroll case, the bid manifestly did not respond to the call.

In the case at bar the invitation to bidders, though stating that the contract must be completed by November 1, 1934, further informed bidders that at the hearing the council would adopt plans and specifications and form of contract for the construction of the project, all in accordance with the plans and specifications on file with the clerk, and that the proposed form of contract would be considered in connection with bids. The specifications provided that each bidder shall be prepared to enter into a written contract with the town of Milford and that the form of contract "shall be in substantial accordance with the one now on file in the office of the town clerk." The general specifications further provide that the contractor must complete the work *within the time specified in the contract*. It will be observed that the call contained a direct reference to the contract and specifications. The proposal of the bidders included the following statement:

"We have examined the plans and specifications, the notice of public hearing, the form of contract, * * * With a full and complete understanding of all the foregoing mentioned items, conditions and stipulations we propose, offer and agree to furnish, install and construct all the work, etc".

We conclude from the foregoing that the bid and contract responded to the call, that each bidder bid on the same proposition, and that no rights or privileges accrued to the Monroe Electric Company not in purview of the call. The call directly referred to the plans and specifications and contract, and the specifications stated that the contractor "shall complete the

work within the time specified in the contract." Each bidder stated in the proposal that he had examined the plans and specifications, the notice of public hearing, and the form of contract prior to submitting the bid. It is apparent that neither bidder was misled by the statement in the call that the work must be finished by November 1, 1934.

It is suggested by appellees that the call contained a specific declaration that the work must be completed on or before November 1, 1934, and that contractors, who might have bid if the exceptions to the special requirement found in the contract and specifications had been set out in the notice, might have been deterred from bidding at all because of the definite unqualified requirement in the published notice.

The contract and specifications do not change the date fixed for completion of the work in the call. They provide only for an extension of time for completion of the project for delay caused by litigation or beyond the control of the contractor. We may take notice of the fact that provisions for extension of time are common in contracts for public improvements, and are of the opinion that a prospective bidder would contemplate that provision would be made in the proceedings for unavoidable delay. It is not claimed that any prospective bidder failed to bid because of the specific requirement of the call. We stated in the case of Nixon v. City of Burlington, 141 Iowa 316, 323, 115 N. W. 239, 241, 18 Ann. Cas. 1037, that:

"The office of the published notice is not, we think, to describe the proposed improvement with minute specifications but rather to apprise the public and persons interested of its general character and give opportunity for investigation and for protest by those desiring to make it."

Section 6134-d5 only requires that the required contents of the notice be stated as nearly as practicable.

We conclude that the failure to specifically set out the provisions for the extension of time for delays in the call did not result in a restriction on competitive bids; that the bid and contract were responsive to the call; and that the court erred in holding that the contract for the construction of the plant was illegal and void.

III. Appellants assert the court erred in holding that the street lighting contract between the town of Milford and the

Northwestern Light & Power Company was valid and in full force and effect because:

"(1) Such contract was void or voidable because the same had never been approved or authorized by the electors of the Town.

"(2) In any event such contract was void or voidable after the expiration of the franchise of the Northwestern Light and Power Company (October, 1933) as such Power Company had no right to use the streets, alleys and public ways thereafter."

Appellees base their contention that the contract is valid though not authorized by the voters of the town on section 5949, found in the chapter on Streets and Public Grounds.

"5949. Lighting. They shall have power to light streets, avenues, alleys, highways, public places, grounds, buildings, landings, market places, and wharves."

Appellants claim that the power of a city to light its streets under section 5949 without submitting the question to a vote of the people has been repealed by implication or modified by Code sections 6130, 6131, and 6143. Section 6130 provides that cities and towns may enter into contracts with persons, corporations, or municipalities for the purchase of electric current for either light or power purposes "for the purpose of selling the same either to residents of the municipality or to others, including corporations, and shall have power to erect and maintain the necessary transmission lines therefor."

Section 720, Code of 1897, found in title V, chapter 4, which treats of the general powers of a city, now sections 6127, 6130, and 6131 of the 1935 Code, was amended by chapter 66, Acts of the 35th General Assembly by adding the following:

"And they shall have power to enter into contracts with persons, corporations or municipalities for the purchase of heat, gas, water, and electric current for either light or power purposes, *and* shall have power to sell the same either to residents of such municipality, or to others, including corporations."

The legislature may have intended by this amendment to authorize a municipality to contract for electric current for the purpose of lighting streets *and* to resell electric current to resi-

dents and others, and the statute as amended might be subject to the construction that section 5949 was modified to the extent that a contract for lighting streets must be submitted to the voters for approval under section 6131 which provides that no such contract of purchase "provided for in section 6130 shall be entered into unless a majority of the legal electors voting thereon vote in favor of the same". Said section 720 was further amended by the 40th General Assembly, and, as above shown, section 6130 now provides that cities and towns may enter into contracts for the purchase of electric current for the *purpose of selling the same either to the residents of the municipalities or to others.*

Section 6130 authorizes cities and towns to contract for electric current for the purpose of resale and section 6131 requires such contracts to be first approved by a majority vote of the electors.

Section 6130 does not refer to the power of a town to light its streets, nor does it include contracts for lighting streets. Section 6143, Code 1935, formerly section 725, Code of 1897, grants the power to cities and towns to require every individual or corporation operating such works or plant to furnish the products to persons applying therefor, and to supply the city or town with gas, heat, water, light, or power for other necessary public purposes, and to regulate rates and service. This section refers only to persons or corporations operating a plant under the provisions of chapter 312. The fact that a town has the right to require a utility company operating under a franchise to furnish electric current for public purposes does not abrogate the power of a city to light streets under section 5949. Such right is not inconsistent with the pre-existing power.

■■■ The functions of a municipality are twofold; one is governmental and the other proprietary and quasi private. In exercising the powers granted under sections 6127 and 6130, a municipality is acting in its proprietary capacity. Incorporated Town v. Ocheyedan Electric Company, 194 Iowa 950, 187 N. W. 560. In exercising its powers to light streets, a town is acting in its governmental capacity and provides for the safety and protection of its citizens and their property and preservation of good order. Code section 5738 states that cities and towns "shall have the general powers and privileges granted, and such others as are incident to municipal corporations of like character * * *

for the protection of their property and inhabitants, and the preservation of peace and good order therein, and they may sue and be sued, contract and be contracted with,'' etc.

Section 5945 grants to cities and towns the supervision and control of all public highways, streets, and alleys within the city.

**█ █ █** The statutes relied on by appellants and the statute relied on by appellees do not have a common history or a common source but are in independent, separate fields of municipal powers. The power of a town to light its streets includes the implied authority to contract with others to furnish such lighting. Levis v. City of Newton, C. C., 75 Fed. 884. See Muncy Electric Light, Heat & Power Co. v. Peoples Electric Light, etc. Co. 218 Pa. 636, 67 Atl. 956; Davenport Gas & Electric Co. v. City of Davenport, 124 Iowa 22, 98 N. W. 892. The town had the general power to contract and the specific statutory power to light· its streets and the right to contract with others to furnish the current. We find no statutes that limit these powers or require formalities or special procedure for such contracts. The statutes relied on by appellants found in chapter 312 refer only to contracts for resale of current. We hold that the street lighting contract was valid though not approved by a vote of the people.

**█ █ █** Appellants further urge on this assignment of error, that though the contract may be valid though not submitted to a vote of the people, the contract became void or voidable after the expiration of the franchise of the Northwestern Light & Power Company in October, 1933, because the said company had no right thereafter to use the streets and alleys.

We cannot agree with appellants. It is true that the transmission lines, poles, and equipment used by the company under its contract with the town to light the streets were placed in the streets and alleys under its franchise from the town. It is not a prerequisite to the exercise by a town of its power to light the streets, alleys, public places, and grounds, etc., to establish and operate an electric light plant or grant a franchise to a corporation or other persons. The fact that the Northwestern Light & Power Company had a franchise and had established its transmission lines in the streets under the franchise and that such franchise has expired is entirely immaterial.

If no franchise had been granted, the town of Milford possessed the power to contract with the company and the town could establish the necessary transmission lines and equipment

in the streets and elleys or grant the company an easement for such purpose in order that the contract might be carried out. The municipality had full control over the streets and alleys, and it was not necessary for the town to grant a franchise to a corporation with whom it has entered into a contract for lighting the streets in order to enable the company to maintain the equipment in the streets to carry out the contract.

IV. Another ground of complaint submitted by appellants is that the court erred in its decision that the plaintiffs, as citizens and users of electric current, had the right to challenge the validity of the construction contract and were entitled to an injunction restraining the performance of said contract, because there was neither pleading, evidence, nor proof that the plaintiffs as taxpayers, citizens, or users of electric current, had suffered or would suffer any damage warranting injunctive relief.

Appellants state that plaintiffs' right to be heard in a judicial tribunal resolves itself to the single question as to whether or not there has been an invasion of some legal or equitable right. To support their contention, they cite the cases of: Iowa Public Service Co. v. City of Emmetsburg et al., 210 Iowa 300, 227 N. W. 514; Donovan Construction Co. v. City of Waterloo, 211 Iowa 506, 231 N. W. 499; Iowa Public Service Co. v. Parsons (Iowa), 272 N. W. 613. In none of the cited cases is the right of a citizen and user of electricity to maintain an action for the purpose of challenging the validity of a municipal contract alleged to be void considered.

Appellants' contention that the plaintiffs as taxpayers suffered no damage because there was no increase of their tax burden and therefore they cannot maintain this action, cannot be sustained. This question was not, as alleged by appellants, adjudicated in the Federal case. This is apparent from the following statement in the supplemental opinion:

"The question which we passed upon was whether the plaintiff, a Delaware corporation with an expired franchise, a non-resident and non-citizen of the town of Milford, and not even a prospective customer of the municipal electric plant, might maintain this suit. The broad question whether a citizen and taxpayer of a town may ever maintain such a suit was not before us and was not decided."

The primary purpose of the mandatory requirement for

competitive bidding is to prevent fraud and collusion and for the protection of public funds. We stated in Iowa Electric Light and Power Company v. Town of Grand Junction, 216 Iowa 1301, 1303, 250 N. W. 136, 137:

"This statute (section 6134-d5) was undoubtedly enacted for the purpose of obtaining competitive bidding and to enable municipal corporations to secure the best bargain for the least money."

Suppose a municipality, without providing for competitive bidding, entered into a contract for the construction of an electric plant for the price of $100,000, the cost to be paid solely out of the earnings, and that the reasonable price for the plant was $50,000. To hold that a citizen and a user of electricity did not suffer an invasion of an equitable or legal right would be illogical and unsound. The citizens of Milford voted to establish the municipal plant. It was for their benefit. In effect the council was the trustee, and the citizens the beneficiaries of the plant who, in our opinion, had the right to institute a suit to restrain the corporation and its officers from violating their duties, from abusing corporate powers, and misusing their power in entering into a contract without competitive bidding, which is a wholesome mandatory requirement for the benefit of such citizens. The excessive cost of the plant, which consumers must pay, would postpone the time the city would obtain title to the plant. It cannot be said that consumers would not be benefited by an earlier acquisition of ownership of the plant, free from debt, and the fixing of rates based on a debt-free plant. The securing of the plant at the lowest price possible through the mandatory requirements of the statute is of substantial interest to the citizens of the town. If appellants' contention were sustained, no recourse could be had to the courts for relief from void, extravagant, ultra vires action of the city council, because there would be no one who had authority to institute the suit to prevent a public wrong, except the state in certain circumstances. We think there is no principle of law that would justify a decision that would bring about such a result. The public welfare requires that such right be lodged in citizens of a community. See, Dillon, Municipal Corporations, 5th Ed., §§1579, 1580; Semones v. Needles, 137 Iowa 177, 114 N. W. 904, 14 L. R. A. (N. S.) 1156, 15 Ann. Cas. 1012; Collins v. Ripley,

·Judge, 8 Iowa 129. We hold plaintiffs had the right to challenge the validity of the construction contract.

**█ █** V. Appellants further allege:

"The Court erred in its decree permitting the Northwestern Light and Power Company to maintain wires charged with electricity, over and upon the streets, avenues, alleys, and other public places in the Town of Milford, and by enjoining the Town officials from abating and removing them as a nuisance, because:

"The franchise of the Northwestern Light and Power Company having expired, it had no right to continue to occupy the streets, alleys and public ways for any purpose whatsoever."

The decree contains the following pronouncement on this proposition:

"The plaintiffs and the classes of persons whom they represent have the right to have the street-lighting service furnished which is being provided and furnished under the terms of said contract; that if the Town is permitted to cut the wires of Northwestern Light & Power Company so that it cannot light the streets, the plaintiffs would have no adequate remedy at law to compensate them; that they have an interest in having the streets lighted; that the Town is still taking current from Northwestern Light and Power Company for the purpose of lighting the streets, and has made no other provision for doing so; that the defendants should be restrained from disturbing the current being furnished for street-lighting service only by Northwestern Light and Power Company."

To sustain this proposition, appellants rely on Incorporated Town of Ackley v. Central States Electric Co., 204 Iowa 1246, 214 N. W. 879, 54 A. L. R. 474; Id., 206 Iowa 533, 220 N. W. 315. These cases do not aid in the solution of the question presented, because in said cases the maintenance of the electric transmission lines across the streets and alleys of the town were without any authority from the town and the defendant was properly enjoined on the ground that the lines constituted a trespass and a nuisance. The contract for lighting the streets was valid and the use and occupancy of the streets by the Northwestern Light & Power Company for the purpose of furnishing current under the contract does not constitute a trespass or a nuisance because

the franchise had expired. No other provision for lighting the business section of the town has been made and we concur in the decision of the trial court that the plaintiffs and the classes of persons they represent are directly and financially interested in having the streets and business district lighted. As stated in division three of this opinion a grant of a special franchise to the company for permission to occupy the streets to enable it to perform the contract was unnecessary.

VI. Appellants also urge:

"The court erred in refusing to hold that the question of the validity of the construction contract between the Town of Milford and the Monroe Electric Company for the construction of the municipal light plant was academic and moot because:

"(a) The contract had been fully performed by the contractor.

"(b) The work done under the contract had been fully paid for by the issuance of negotiable coupon revenue bonds."

In their argument the appellants state:

"This construction contract was fully completed, accepted by the Town of Milford, and the bonds delivered to the contractor in April, 1935, at which time the contract was fully performed as far as the defendants, Town of Milford and its officers, and the Monroe Electric Company were concerned.

"Neither by pleading or proof has the plaintiff shown that the Monroe Electric Company are the present holder of the bonds, or were the holder of the bonds at any time after their delivery to said Monroe Electric Company.

"Certainly the court had no authority to make any decree affecting the rights of the holders or owners of the bonds without their being made parties to this action."

Plaintiffs sought not only to restrain the building of the plant, but also prayed that the defendants be restrained from performing the contract in any manner, from paying the pledge warrants, from paying the purchase price of the plant, from operating the plant and doing anything in the further attempted performance of the contract.

A question is not moot if there remains anything on which a decision of the court can operate. The fact that the plant has been built would not preclude plaintiffs from restraining

the operation of the plant and doing acts remaining to be done under the contract if the contract were void. Iowa Electric Company v. Town of Winthrop, 198 Iowa 196, 198 N. W. 14. This statement does not refer to the rights of holders of negotiable bonds issued in payment of the plant and not made parties to the suit. Further discussion of this issue is unnecessary, as we have held the contract valid.

The judgment and decree appealed from should be and is affirmed, with the exception of the adjudication that the contract for the construction of the municipal plant is void for lack of competitive bidding; as to such holding the case is reversed.

Reversed in part, affirmed in part and remanded for a decree in harmony with this opinion.—Reversed in part, affirmed in part, and remanded.

ANDERSON, KINTZINGER, MITCHELL, and SAGER, JJ., concur.