**WANTLAND et al. v. ANDERSON et al.**

No. 11699.

Court of Civil Appeals of Texas.
San Antonio.
March 26, 1947.

Rehearing Denied April 23, 1947.

Neil E. Beaton, of San Antonio, for appellants.

Nat L. Hardy, Carl Wright Johnson, William N. Hensley and H. G. Davis, Asst. Dist. Attys., all of San Antonio, for appellees.

MURRAY, Justice.

This suit was instituted by Clyde Wantland and four other persons, suing in the capacity of resident taxpaying citizens of Bexar County, against the County Judge, County Commissioners, County Clerk, County Treasurer, County Auditor of Bexar County and W. A. Kelly, doing business as Kelly Construction Company, seeking an injunction restraining the county officials from paying and W. A. Kelly from receiving pay for the paving of a certain piece of roadway in Bexar County known as "Uhr Drive."

The parties appeared before the court on November 7, 1946, for a hearing upon the exceptions of the defendants to plaintiffs' petition. A hearing was had, and on November 8, 1946, the court sustained all of the exceptions, denied plaintiffs the right to amend and dismissed the cause, from which judgment of dismissal plaintiffs have prosecuted this appeal.

The trial court, in sustaining the first exception, held, in effect, that plaintiffs' petition did not set up a justiciable or litigable cause of action in plaintiffs for the relief sought. In this we think the court was correct. The Commissioners' Court had directed the County Auditor to advertise for bids for the paving of "Uhr Drive," the Auditor had published such notice, four contractors had made bids, Kelly's was found to be the lowest and best bid and had been accepted by the Commissioners' Court. The notice published contained the following provision: "The successful bidder or bidders, or their assigns, will be required to accept, as payment of the contract price, such amount of Bexar County Road and Bridge 3% Warrants, dated February 15th, 1946, having a maximum maturity date of February 15th, 1962, as shall be required to service said contract, but not exceeding the principal amount of Fifteen Thousand Dollars ($15,000.00), according to plans and specifications on file in the office of the County Engineer, Bexar County, Texas." It also stated the time and place for the reception of bids.

On August 28, 1946, the Commissioners' Court entered an order accepting Kelly's bid in the sum of $6,935.46. Some nine days later, on September 6, 1946, the Commissioners' Court entered another order ratifying and approving the contract with Kelly but provided further that the contract price of $6,935.46 should be paid by an appropriation of this amount out of the current Road and Bridge Funds then to the Credit of Commissioner of Precinct No. 3, of Bexar County, and directing the County Auditor and County Treasurer to set aside out of these funds the amount of $6,935.46, and that said funds be used for the payment of the contract price of the Kelly Construction Company and for no other purpose. This order further provided that the Road and Bridge 3% warrants would not be required to service the contract with Kelly Construction Company and they were made available for other Road and Bridge purposes as might be authorized by the Commissioners' Court.

Appellants sued in no other capacity than as resident taxpaying citizens and, under the general rule, they cannot maintain this suit unless they show themselves to have a special interest in the subject matter of the suit, or that they will be subjected to damages peculiar to themselves.

There is no exception to this rule unless such authority is given by legislative enactment. Hoff v. Westhoff, Tex.Civ.App., 102 S.W.2d 293; City of San Antonio v. Stumburg, 70 Tex. 366, 7 S.W. 754; Powell v. City of Baird, Tex.Civ.App., 132 S.W.2d 464.

■ In Osborne v. Keith, 142 Tex. 262, 177 S.W.2d 198, 200, Judge Hickman, speaking for the Commission of Appeals, said: "This court recognizes the right of a taxpaying citizen to maintain an action in a court of equity to enjoin public officials from expending public funds under a contract that is void or illegal. Looscan v. County of Harris, 58 Tex. 511; City of Austin v. McCall, 95 Tex. 565, 68 S.W. 791; Terrell v. Middleton, Tex.Civ.App., 187 S.W.367, error refused, 108 Tex. 14, 191 S.W. 1138, 193 S.W. 139; Hoffman v. Davis, 128 Tex. 503, 100 S.W.2d 94. The vigilance of a citizen who takes upon himself that burden in the interest of good government is to be commended. However, the procedure is generally recognized as being drastic and, in order to be authorized to maintain such an action, a citizen must bring himself strictly within the established rules. Governments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review. The right, therefore, of a citizen to maintain such an action is strictly limited to cases of illegality of the proposed expenditure and does not extend to cases of unwise or indiscreet expenditures. The contract upon which it is proposed to pay out public funds must be illegal and not merely voidable at the option of the public official entrusted with authority in the premises. Spears v. City of South Houston, 136 Tex. 218, 150 S.W.2d 74; Bexar County v. Hatley, 136 Tex. 354, 150 S.W.2d 980; Mayer v. Kostes, Tex.Civ.App., 71 S.W.2d 398, writ refused; Glimpse v. Bexar County, Tex.Civ.App., 160 S.W.2d 966, writ refused."

■ Thus it will be seen that unless appellants have alleged facts which show the contract with Kelly Construction Company to be illegal and void, they do not have such justiciable interest in the subject matter of the suit as will authorize them to maintain this suit.

Appellants contend that they are given authority to maintain this suit by the provisions of Sec. 9 of Art 2368a, Vernon's Ann. Civ. Statutes, which provide, among other things and in substance, that any warrant or other evidence of debt or obligation created or attempted to be created by the Commissioners' Court of any county in violation of or contrary to the provisions of this act shall be void, and the payment thereof may be enjoined by any taxpaying citizen of such county in any court of competent jurisdiction in such county. Appellants contend that in making this contract with Kelly Construction Company both sections 2 and 3 of this article were violated. Sec. 2 provides, in effect, that if the Commissioners' Court of a county desires to enter into a contract calling for the expenditure of $2,000 or more, it must submit such contract to competitive bids. Notice of the time and place when and where such contract shall be let shall be published, etc. Sec. 3 provides as follows: "When it shall be the intention of the Commissioners' Court, or the governing body, to issue time warrants for the payment of all or any part of the proposed contract, the notice to bidders required under Section 2 of this Act shall recite that fact, setting out the maximum amount of the proposed time warrant indebtedness, the rate of interest such time warrants are to bear, and the maximum maturity date thereof."

As heretofore stated, the notice given with reference to the paving contract for "Uhr Drive" recited that the successful bidder would be required to accept, as payment of the contract price, such amount of Bexar County Road and Bridge 3% warrants as shall be required to service such contract, but not exceeding the principal amount of $15,000. It also gave the time and place of accepting bids. Appellants' exact contention is that the bids were submitted for a contract to be paid by warrants, while the contract actually made with Kelly was one to be paid for in cash, and that therefore there was a material variance be-

tween the contract as bid for and the contract as entered into, and that thus the contract entered into was void and illegal.

■ The question presented is: Does the Commissioners' Court have the legal right to advertise for bids upon a proposed contract to be paid in warrants and then enter into a contract to be paid in cash? We think that, under the circumstances of this case, the Commissioners' Court does have such authority. There is no allegation that Bexar County Road and Bridge 3% Warrants were selling below par. Unless the warrants were of a cash value of below par the contractor could not be receiving more money for the carrying out of his contract by being paid in cash than if he was being paid in warrants, and the county might be saving some interest by paying cash. If the warrants were worth above par then Kelly would be the only person who could complain because he did not get the warrants.

■ It will be noted that Section 3, supra, does not require that the exact amount to be paid in warrants shall be set forth in the notice, but only the maximum amount of the proposed time warrant indebtedness. This language would clearly indicate that the Commissioners' Court could legally pay a lesser sum in warrants but not a greater sum. If this be true, then the entire consideration might be paid in cash, if the Commissioners' Court should determine that it would be to the interest of the county to pay in cash. Of course, if it could be alleged and shown that the Commissioners' Court had acted in bad faith, either in advertising that payment would be by warrant or in later paying in cash, a different question would arise, but here there is no allegation of bad faith.

■ Furthermore, where there is a variation between the contract as advertised and the one actually entered into, such variation must be substantial before it will render such contract void and illegal. Pascoe v. Barlum, 247 Mich. 343, 225 N.W. 506, 65 A.L.R. 833; Miller v. Milford, 224 Iowa 753, 276 N.W. 826, 114 A.L.R. 1423, and annotations at page 1437; 43 Am.Jur. p. 789, par. 46. There are no allegations in appellants' petition which would indicate that the variation here complained of was a substantial variation. It is clear to us that a Commissioners' Court cannot advertise a contract as one to be paid in cash and then attempt to pay it in warrants, because this would violate the provisions of Sec. 3 of Art. 2368a, supra, which provides, if payment in warrants is contemplated the notice must so state. It would defect also the provisions of Sec. 4, which provide that the voters may protest the issuing of such warrants. But, on the other hand, where the notice has stated the maximum amount which may be paid in warrants, it occurs to us that in the final approval of a contract, or in the final settlement of the contract, if the court has the cash on hand it can always, in the exercise of its honest discretion and with the consent of the contractor, decide not to issue the warrants and pay in cash. The trial court properly sustained the first exception, thereby holding that under appellants' allegations contained in their petition they had not shown themselves to have such a justiciable or litigable interest in the subject matter of this cause as to authorize them to maintain this suit and, further, that they did not have any such statutory right.

■ This brings us to a consideration of whether the trial court committed reversible error in dismissing the cause without first giving appellants an opportunity to amend their petition. This cause had been placed on the jury trial docket, but it had not been set for trial, and, under Rule 63, Texas R. C.P., appellants would ordinarily have had the right to file amended pleadings without the leave of the court up to seven days before the date of trial. However, the trial court having correctly held that appellants did not have a legal right to file and prosecute this suit in the sole capacity of resident taxpaying citizens, and appellants not having shown, even in their brief filed herein, that there was any probability they could overcome this matter by alleging new facts, this Court will not reverse the cause simply because appellants were not given an opportunity to amend.

In City of Fort Worth v. Gilliland, 140 Tex. 616, 169 S.W.2d 149, 150, Judge Harvey, speaking for the Commission of

Appeals, said: "On September 17, 1941, all parties appeared for hearing of said exception, which was duly heard and sustained. Thereupon the plaintiffs requested leave to amend their first amended original petition, which request was refused by the court, and judgment was entered dismissing the suit. It is from this dismissal judgment that this appeal is prosecuted. We have heretofore shown that the action of the trial judge in sustaining the exception to said amended original petition is correct. The reason assigned by the judge in refusing further leave to amend is to the effect that no reasonable probability appeared that a further amendment would disclose facts legally sufficient to sustain a cause of action for a permanent injunction. We are unable to discern that the action of the trial court is erroneous. The averments of said first amended petition, as we have heretofore shown, affirmatively disclose that no private right of any of the plaintiffs is in jeopardy."

The judgment of the trial court is affirmed.