ALBERT ELIA BUILDING CO., INC., a corporation, Plaintiff,

v.

SIOUX CITY, IOWA, et al., Defendants.

No. C76–4037.

United States District Court,
N. D. Iowa, W. D.

Aug. 6, 1976.

Charles R. Wolle, Gerald M. Kraai, Lawrence D. Kudej, Sioux City, Iowa, Barry L. Radlin, Buffalo, N. Y., for plaintiff.

James Abshier, Sioux City, Iowa, for Water Quality Commission.

Richard Turner, Atty. Gen., State of Iowa, Des Moines, Iowa, for Svore.

Jerome H. Svore, Regional Administrator, Region VII, for the U. S. Environmental Protection Agency, Kansas City, Mo., for U. S. Enviro-Con, Inc.

James L. Hawkins, St. Louis, Mo., W. E. Kunze, Sioux City, Iowa, for defendants.

## ORDER

McMANUS, Chief Judge.

This matter is before the court for decision upon the stipulation of the parties, the administrative record and oral arguments held on July 30, 1976.

The facts giving rise to this action are as follows: On March 19, 1976 the City of Sioux City, Iowa (Grantee) was awarded a grant by the Environmental Protection Agency, Region VII, under Title II of the Federal Water Pollution Control Act Amendments of 1972 for the construction of wastewater treatment plant improvements. The grant was in the sum of $24,305,550, being 75 percent of the total estimated eligible project cost of $32,407,400.

Pursuant to the document entitled "Contract Documents and Specifications for Wastewater Treatment Works Improvements Sioux City, Iowa" (invitation), bids were received by the city on May 18, 1976.

Defendant U. S. Enviro-Con, Inc. (Enviro-Con) was the apparent low bidder in the amount of $18,965,314, and plaintiff Albert Elia Building Company, Inc. (Elia) submitted the next lowest bid in the sum of $19,400,000. Elia filed timely protest with the city, alleging that Enviro-Con's bid was not responsive. Specifically, Elia alleged that the quotations received from the listed suppliers for Items 1 & 12 of the Major Equipment Stipulation were significantly different from the specifications and hence the bid was not responsive since it was presumably based on noncomplying equipment.

A hearing was held on the protest by Grantee, and written statements were prepared by its consulting engineer and city attorney. Both the engineer and city attorney concluded that Enviro-Con's bid was not responsive. Grantee concurred, rejecting Enviro-Con's bid and accepting Elia's on June 7, 1976.

Enviro-Con then filed for review by the EPA Regional Administrator in accordance with 40 CFR 35.939(e). A conference was held by EPA's Regional Counsel pursuant to 40 CFR 35.939(e)(2) on June 24, 1976. Regional Counsel filed his report recommending that Enviro-Con's protest be sustained on July 12, 1976. This report was adopted by the Regional Administrator and a letter to that effect sent to Grantee on

July 12. It subsequently accepted Enviro-Con's bid.

Elia then filed suit in Iowa State Court seeking a determination of responsiveness of the bid by that court. That action was removed to this court, and a motion to dismiss on jurisdictional grounds was filed.

In the meantime, due to the time pressures in this case, a pretrial conference was set on July 26, 1976 by the U.S. Magistrate. At the pretrial this action was filed with all parties agreeing to accept service and that the matter should be resolved as expeditiously as possible. A hearing was set before the court on July 30, 1976 at which time a certified copy of the administrative record was submitted to the court and the parties given until August 3, 1976 to file any additional briefs.

While initially jurisdiction was challenged by the Regional Administrator, this claim was withdrawn in its later brief, and the court is satisfied from its examination of the pleadings that jurisdiction exists in this action under 28 U.S.C. § 1331.

■ As a general rule, agency action of the type involved must be set aside if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or if the action failed to meet statutory, procedural or constitutional requirements. 5 U.S.C. § 706. Sections 706(2)(E) & (F) also provide respectively for review on the basis of substantial evidence or de novo review in certain limited situations which none of the parties contend are applicable here.

■ Further, while the Administrator's decision is entitled to a presumption of regularity, this does not relieve the court of its obligation to conduct a thorough, probing and in-depth review, first, into whether the Administrator has acted within the scope of his authority, and, secondly, as to whether his decision was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. See, e. g., *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *American Federation of State, County and Municipal Employees v. City of Cleveland*, 484 F.2d 339 (6th Cir. 1973).

In discussing this review, the Supreme Court said in *Overton Park*, 401 U.S. at pp. 415 & 416, 91 S.Ct. at pp. 823 & 824:

The court is first required to decide whether the Secretary acted within the scope of his authority. *Schilling v. Rogers*, 363 U.S. 666, 676–677 [80 S.Ct. 1288, 1295–1296, 4 L.Ed.2d 1478] (1960). This determination naturally begins with a delineation of the scope of the Secretary's authority and discretion. L. Jaffe, Judicial Control of Administrative Action 359 (1965). As has been shown, Congress has specified only a small range of choices that the Secretary can make. Also involved in this initial inquiry is a determination of whether on the facts the Secretary's decision can reasonably be said to be within that range. The reviewing court must consider whether the Secretary properly construed his authority to approve the use of parkland as limited to situations where there are no feasible alternative routes or where feasible alternative routes involve uniquely difficult problems. And the reviewing court must be able to find that the Secretary could have reasonably believed that in this case there are no feasible alternatives or that alternatives do involve unique problems.

Scrutiny of the facts does not end, however, with the determination that the Secretary has acted within the scope of his statutory authority. Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1964 ed., Supp. V). To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Jaffe, *supra*, at 182. See *McBee v. Bomar*, 296 F.2d 235, 237 (CA6 1961); *In re Josephson*, 218 F.2d 174, 182 (CA1 1954); *Western Addition Community Organization v. Weaver*, 294 F.Supp. 433 (N.D.Cal.1968). See also *Wong Wing Hang v. Immigration and Naturalization*

*Serv.*, 360 F.2d 715, 719 (CA2 1966). Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

See also *Bowman Transp. v. Ark-Best Freight System*, 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974), where the Court said in relation to the arbitrary and capricious standard:

Under the "arbitrary and capricious" standard the scope of review is a narrow one. A reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park v. Volpe, supra*, 401 U.S. at 416, [91 S.Ct. [814] at 824]. The agency must articulate a "rational connection between the facts found and the choice made." *Burlington Truck Lines v. United States*, 371 U.S. 156, 168, [83 S.Ct. 239, 246, 9 L.Ed.2d 207] (1962). While we may not supply a reasoned basis for the agency's action that the agency itself has not given, *SEC v. Chenery Corp.*, 332 U.S. 194, 196, [67 S.Ct. 1575, 1577, 91 L.Ed. 1995] (1947), we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned. *Colorado Interstate Gas Co. v. FPC*, 324 U.S. 581, 595, [65 S.Ct. 829, 836, 89 L.Ed. 1206] (1945). Having summarized the appropriate scope of review, we proceed to consider the District Court's objections seriatim.

Applying this standard of review, it is the view of the court that the decision of the Administrator must be upheld.

Plaintiff's first contention is that the Regional Administrator had no authority to overrule the Grantee's initial determination unless it was wrong and unlawful itself.

■ Here the Regional Counsel found, and that finding was adopted by the Regional Administrator, that the Grantee had not sustained its burden under 40 CFR 35.-939(g)(2). This finding is clearly within his authority and supported by the record. Likewise it is the view of this court that the Regional Counsel considered relevant factors and made no clear error of judgment or law.

■ Like the Regional Counsel, this court is of the view that the responsiveness of the bid is to be determined from the face of the bid. Counsel for Elia argues that it was somehow improper for the Regional Administrator to consider other than Iowa law in arriving at his decision. However, this overlooks 40 CFR 35.939(F) and the fact the federal and state authorities appear to be in substantial agreement on what constitutes a responsive bid. That is, to be responsive a bid must conform substantially to the advertised terms, plans and specifications in the invitation for bids. See, e. g., *Greaves v. City of Villisca*, 221 Iowa 776, 266 N.W. 805 (1936); *Miller v. Milford*, 224 Iowa 753, 276 N.W. 826 (1937); *Northeast Construction Co. v. Romney*, 157 U.S.App.D.C. 381, 485 F.2d 752 (1973); *In re: Lanetti & Sons*, 55 Comp.Gen. 414 (1975).

■ Here, keeping in mind the nature of the court's review, the decision of the Regional Administrator must be affirmed. Relevant provisions of the invitation are set forth in the Appendix hereto.

Elia argues that since the equipment offered to the bidders by FMC and Carter did not comply with the specifications, that by listing these suppliers Enviro-Con's bid must necessarily be a counteroffer of alternative equipment that has not been previously approved by the Grantee. The argument continues, to allow this type of bidding will open the door to such evils as post-bid shopping and undue pressure on the Grantee to accept inferior equipment, ultimately giving Enviro-Con a competitive advantage.

This argument fails, however, for several reasons. As pointed out by Enviro-Con and the Regional Counsel, it is the contractor who has the burden to comply with the specifications in the contract. The argument made by Elia that "The time to meet the plans is at bid stage and not subsequent to an award" is more than adequately dealt with by the Regional Counsel at pages 8–10 of his report.

In addition the invitation did not require a bidder to list specific equipment but only to name a manufacturer listed in the invitation. In this regard the contractor is on notice the listing of a manufacturer does not imply automatic approval of all equipment but this responsibility for compliance with the spec's remains with the contractor. In this vein it does appear that both FMC and Carter have the capabilities of supplying conforming equipment. Indeed it would seem unfair under the wording of this bid invitation to require a contractor to do more than Enviro-Con did. The court would note that Enviro-Con was apparently not the only one under this interpretation since almost half of the bidders listed FMC or Carter.

Neither are Elia's arguments persuasive that Enviro-Con will somehow obtain a competitive advantage. Again these arguments were adequately dealt with by the Regional Counsel and adopted by the Regional Administrator.

In short, the court is of the view that Enviro-Con's bid proposal was in substantial compliance with the invitation and contained no qualifications, reservations or omissions which would render it unresponsive as a matter of law. Hence the Regional Administrator did not err as a matter of law or judgment in determining that Grantee had failed to sustain its burden of proving that the bid was not responsive.

It is therefore

ORDERED

1. This action is dismissed.

2. Civil No. 76–4036 is dismissed for want of subject matter jurisdiction.

APPENDIX

## 17. MAJOR EQUIPMENT STIPULATION:

### a. *Base Bid Major Equipment:*

The bidder shall list in his proposal the major items of equipment he proposes to use in the construction of the work.

The equipment item and the manufacturer thereof shall be selected from the schedule of "Base Bid Major Equipment" which follows hereinafter where they are listed as qualified suppliers of equipment acceptable for use on this project. As an alternate, the bidder may list equipment which a general contractor wishes to offer and which has been submitted to the Engineers by a general contractor for pre-qualification and which has been approved by addendum issued prior to the opening of bids.

Should the bidder fail to list in his proposal an equipment manufacturer either from the "Base Bid Major Equipment" schedule, or from an approved pre-qualified alternate manufacturer, the proposal shall be considered as not responsive and shall be subject to rejection by the Owner, or the Contractor will be required to install equipment selected by the Engineer from the "Base Bid Major Equipment" schedule, or an approved pre-qualified alternate equipment.

### b. *Pre-Qualification of Alternate Base Bid Major Equipment:*

Any general contractor who desires to bid a major equipment item which is not named in the attached schedule of "Base Bid Major Equipment" must submit to the Engineer the data and information required for pre-qualification by the Engineer at least 21 days prior to the bid opening date. Only general contractors may submit requests for pre-qualification of base bid major equipment, and requests originating from other sources will not be given consideration.

In the event the alternate equipment item is found by the Engineer to be approvable for project use, an addendum will be issued not later than seven days prior to the

APPENDIX—Continued

bid opening date, authorizing all bidders to list the pre-qualified alternate equipment in their base bid if desired. Alternate equipment not having been pre-qualified and approved by addendum shall not be offered.

The data and information to be submitted to the Engineers for pre-qualification of alternate equipment must contain, but is not limited to, the following:

(1) Detailed dimension prints drawn at an easy-to-read scale.

(2) Specifications covering all materials of construction used in the equipment.

(3) Operating characteristics including power requirements, maintenance requirements, source and availability of replacement parts.

(4) Location of manufacturer and location of nearest permanent service representative.

(5) Details of controls and accessories required in connection with the equipment operation.

(6) Any other information which the Engineer may require to make a satisfactory evaluation of the equipment offered.

(7) See item specifications for additional pre-qualification requirements which may apply to specific items.

c. *Cost of Modifications:*

Under all conditions where equipment furnished, and the selection of the equipment is made either from the "Base Bid Major Equipment" schedule or from acceptable pre-qualified equipment, and due to the lack of standardization of equipment produced by various manufacturers, it may be necessary to make modifications in the structures, buildings, mechanical work, electrical work, controls, accessories, etc. in order to properly install the equipment to be used.

The bid price for any and all equipment offered shall include the cost of making any and all necessary changes and, in addition thereto, the bid price shall also include the cost of preparation of detailed drawings showing the changes required, which draw-

ings shall be subject to approval by the Engineer.

d. *Schedule of Base Bid Major Equipment:*

(1) *Mechanical Bar Screens:*
   (a) Envirex, Inc.
   (b) Link Belt—F.M.C. Corp.

\*     \*     \*     \*     \*     \*

(12) Digester Equipment, Heat Exchangers, Covers, Gas Recirculating, Gas Equipment:
   (a) Envirex, Inc.
   (b) Carter.

May 3, 1976

ADDENDUM NO. 2

RE: *Sioux City, Iowa*
Wastewater Treatment Works
Improvements
Proposals Received May 18,
1976–1:00P.M.
Project C190584

*TO:* All Parties Holding Plans and Specifications

*FRUM:* Buell and Winter Engineering Company

*SUBJECT:* Addendum to Plans and Specifications

Certain changes, additions, and revisions of the plans and specifications have been made, and the relevant Parts and Items affected to some degree by this Addendum No. 2 are listed as follows:

\*     \*     \*     \*     \*     \*

*Part VIII—Special Conditions*

*Page VIII–12—Paragraph 17a, Base Bid Major Equipment:*

Add "The condition that the Bidder shall list in his proposal the major items of equipment he proposes to use in the construction of the work is interpreted to mean that only one supplier's name shall be listed under each item in the proposal schedule of base bid major equipment.

"In the event this interpretation is not followed, and more than one supplier's

APPENDIX—Continued

name is quoted, the City shall have the option in the selection of the supplier to be used.

"Even though a manufacturer's name appears in the Schedule of Base Bid Major Equipment as being capable of supplying equipment that will meet the specifications, it is not to be inferred that any and all equipment manufactured by the said manufacturer will be acceptable, and in all cases the equipment supplied must substantially comply with the sizes and the mechanical or electrical specifications under which the equipment is offered. It is the Contractor's responsibility that the above conditions are satisfied, and if the equipment offered does not comply therewith, the Contractor shall supply other equipment which is acceptable and does comply."

Add. 2–1