The CITY OF CROCKETT, Appellant,

v.

Earl MURDOCK, Appellee.

No. 423.

Court of Civil Appeals of Texas.

Tyler.

April 24, 1969.

Rehearing Denied May 15, 1969.

Sallas, Griffith & Meriwether, Gus E. Meriwether, Crockett, for appellant.

Adams, Granberry & Hines, F. P. Granberry, Crockett, for appellee.

DUNAGAN, Chief Justice.

This suit was instituted in the District Court of Houston County, Texas, by appellee, Earl Murdock, against appellant, The City of Crockett, seeking to recover the sum of $1,522.50 deposited by appellee with appellant in lieu of a bid bond necessary in order to bid upon a public works contract. The case was tried to a jury, but at the conclusion of the evidence, by agreement, the case was withdrawn from the jury and

all matters were submitted to the court for a decision. The court granted judgment for appellee in the amount for which suit was brought. Appellant has timely perfected this appeal. Upon request, the court made and filed its findings of fact and conclusions of law, to which appellant excepted.

The facts developed in the trial are as follows: The City of Crockett, in 1962, desiring to construct a fire station, advertised for bids for the work. Appellee, as a contractor, received a copy of the plans and specifications issued by appellant and in due course submitted his proposal or bid accompanying the same with a cashier's check in the sum of $1,522.50. The specifications issued by appellant contained several provisions which are here relevant.[1]

On May 14, 1962, the bids were opened and appellee was the low bidder. On the following day, appellee was orally notified by appellant that his bid was the lowest and that the contract for the job would be executed upon his furnishing the proper performance and payment bonds as required by the specifications.[2] Although the specifications provided that the performance and payment bonds would be furnished within ten days after written notification from the architect of the award of the contract to the lowest bidder, the evidence shows that no formal written notification by the architect was given to appellee. However, it is undisputed that appellee was advised and had actual knowledge that the contract would be executed upon his furnishing the performance and payment bonds. Appellee, the only witness testifying in the case, admitted that having been awarded the contract, he attempted to obtain the performance and payment bonds, but was unable to do so. He did not ask for the return of his deposit until approximately one month after they had advised him he was the low bidder. Appellee further admitted that although the authorities of the City of Crockett gave him up to July 25, 1962, within which to furnish the performance and payment bonds, he was unable to obtain them and such failure on his part was the reason for the contract not being formally executed.

It was further shown that appellant, by instrument dated April 18, 1962, issued its Addendum No. 1, but it is not clear and the record does not show the exact date appellee acquired knowledge of the contents of

1. "7. BID SECURITY:
"A Cashier's Check, Certified Check or Bidder's Bond, payable to The City of Crockett, in an amount not less than five per cent (5%) of the largest possible total bid or bids, including consideration of alternates, must accompany each bid as a guarantee that, if awarded the contract, the bidder will promptly enter into a contract and execute bonds in the forms provided. If the bidder defaults in this, the Cashier's Check, Certified Check or Bidder's Bond shall become the property of the City of Crockett, as the proper measure of liquidated damages sustained. Bid security will be returned upon award of the contract or rejection of bids."
"13. ADDENDA:
"Addenda issued during the time of bidding are included in the Contract Documents."
"3. DEFINITION:
"The Contract Documents—will consist of the Agreement between the Owner and the Contractor, the Proposal and General Conditions of the Contract, Supplementary General Conditions, contract Bond, Drawings and Specifications as prepared by the Architect, and including any modifications thereto incorporated in the documents before their execution or any change orders approved by the Owner after construction has started."

2. "8. PERFORMANCE AND PAYMENT BONDS:
"The accepted bidder will be required to sign the Contract and to furnish Performance Bond and Payment Bond in accordance with the requirements of Article 5160, Revised Civil Statutes of Texas as revised by House Bill 344, Acts of 56th Legislature, within ten (10) days after written notification from the Architect of the award of the contract to him."

the addendum.[3] However, he did have notice that appellant was authorized by virtue of the provisions of the specifications to make certain addenda to the contract. The record is silent as to whether the requirements of Addendum No. 1 were more onerous or more favorable to appellee than those contained in the original specifications and there is no evidence in the record as to whether Addendum No. 1 increased the cost for the contract or in any way enlarged the contractor's obligations or diminished his contemplated profits. There is no evidence that appellee refused to enter into the contract because of the issuance or contents of the addendum but, to the contrary, he stated that the contract was not executed because of his own inability to obtain the required bonds. Appellee advised appellant on or about July 25, 1962, that he was unable to obtain a performance bond and the record does not show that up to that time appellee had ever raised any objection with reference to the issuance of the addendum. Insofar as is material here, the trial court found that after the bids were opened, appellee was first informed of the existing addendum to the specifications; that neither the architect nor anyone acting for appellant notified appellee, in writing, that he was the successful bidder. The trial court further found that at no time was a formal contract for the construction of the fire station tendered to appellee, but further found that appellee had actual knowledge of the award of the contract to him and he was advised that a formal contract would be executed upon his furnishing the per-

formance and payment bonds as required by the specifications. The court found also that appellee failed to furnish the bonds and that he advised the governing body of The City of Crockett on July 25, 1962, that he could not obtain either bond.

The trial court held that when appellant accepted the bid of appellee for the construction of the fire station without advising him of the issuance of the addendum, appellant forfeited any right it may have had to retain the amount of the bid deposit and that the addendum constituted a material change in the specifications upon which appellee had based his bid. The court further concluded that appellee could not be in default in his failure to furnish the performance and payment bonds until appellant's architect had first notified appellee, in writing, that he was the successful bidder and the court further found that no contract had ever been tendered to appellee. Accordingly, judgment was entered in appellee's favor for the amount of the deposit he had made with his proposal.

By appropriate Points of Error, appellant attacks the trial court's judgment on the following grounds: (a) Appellee was barred from recovering the deposit because of his failure and inability to furnish the performance and payment bonds; (b) There is no evidence supporting the trial court's finding that no contract was tendered appellee, and that such finding likewise is against the great weight and preponderance of the evidence; (c) The trial court erred in finding that Addendum No. 1 was

---

3. Addendum No. 1 related to treatment of the lumber for columns and the type of water-proofing adhesives to be used thereon. The specifications provided as follows:

"5. MATERIALS:

"(a) Lumber—shall be Southern Yellow Pine. Lamination combination number shall be 1–8. Lumber shall be kiln-dried with a moisture content of 8 to 14%.

"(b) Adhesives—shall be water resistant casin, with mold inhibitor conforming to federal Specification MMM–A–125."

Addendum No. 1 read as follows:
"MATERIALS:

"(a) Lumber—* * * Lumber for columns shall be pressure treated with a preservative material to equal Wolman, FS TT–W–573, or Osmose, FS TT–W–571F, with retention of not less than 0.35 lbs. per cubic feet of wood.

"(b) Adhesives—* * * Adhesives for columns shall be waterproof conforming to Military Specification MIC–A–397."

a material change to the specifications, relieving appellee from default; and (d) The trial court erroneously held that the failure of appellant's architect to notify appellee in writing that he was the successful bidder relieved appellee from default.

On the other hand, appellee attempts to sustain the judgment below upon the following grounds: (a) The issuance of Addendum No. 1, of which appellee had no knowledge at the time he made his bid, was a material change in the drawings and specifications, relieving appellee of his default; and (b) The failure of appellant's architect to give appellee written notice that he was the successful bidder as required by specifications and the failure of appellant to tender the contract to appellee operated to relieve appellee of his failure to furnish the bonds.

In our opinion, the trial court's judgment cannot be sustained upon either ground.

The evidence discloses that Addendum No. 1 was issued by instrument dated April 18, 1962. There is no evidence in the record as to whether the requirements of such addendum were more or less onerous than those contained in the original specifications. The record does not show whether the addendum increased the contractor's costs in the performance of the contract or in any other way enlarged or diminished his obligations thereunder. According to the record, appellee claims he did not learn of the existence or contents of the addendum until the bids were opened on May 14, 1962. However, he continued in his efforts to obtain the performance and payment bonds up until July 25, 1962, at which time he advised appellant that he was unable to obtain the bonds. He admitted that the appellant had given him up until July 25, 1962, to obtain these bonds. Further, there is no evidence in the record that appellee refused to enter into the formal contract because of the existence of the addendum. There is no evidence that he at any time raised any objection to the addendum or made any complaint to appellant based upon

its issuance. Appellee was charged with notice in the specifications that addenda could issue during the time of the bidding and, if issued, would be included in the contract documents. Yet appellee made no effort or inquiry, insofar as the record shows, to ascertain whether any addenda had been issued by the City.

We recognize that the generally accepted rule is that where a statute requires that a contract for public works shall be let to the lowest responsible bidder, municipal corporations or administrative agencies cannot evade the law by making a substantial change in the contract after it had been awarded pursuant to the law. If the deviations from a contract awarded for the construction of a public work vary so substantially from the original plan as to constitute a new undertaking, the contract could be let only by competitive bidding. However, in order to render the contract void because of the changes or deviations, the same must be substantial. Wantland et al. v. Anderson et al., 203 S.W.2d 787 (Tex. Civ.App., 1947, n. r. e.). Inasmuch as there is no evidence showing what effect, if any, the addendum would have had on the contract or its performance, it can hardly be said that the addendum was a material change as found by the trial court.

Appellee cites and relies principally upon the case of Cotter et al. v. Casteel et al., 37 S.W. 791 (Tex.Civ.App., 1896, err. ref.), wherein the court held that a contractor was entitled to the return of his bid security when the City of Galveston made certain changes in the contract submitted to the successful bidder. This case is easily distinguishable from the one now under consideration because the changes made by the City of Galveston after the bid were material and substantial and were obviously more onerous upon the successful bidder. The contract tendered by the City in *Cotter* varied materially in at least three respects from the provisions in the specifications. Although the specifications called for the payment to the contractor in monthly payments as the work was completed, the City,

in the contract tendered, provided that the contractor wait for his money until most of it could be collected by assessments. Moreover, a provision was added in the tendered contract authorizing the City to seize all of the contractor's tools and appliances if the force of workmen or quantity of the tools employed by the contractor were considered insufficient to insure completion within the stipulated time, and, finally, the tendered contract further purported to authorize the City to deduct from any money due whatever it might deem necessary to protect it against what it might have to pay out on labor claims in connection therewith. The court held simply that these changes were material and substantial and entitled the successful bidder to withdraw his deposit after he refused to sign the tendered contract. In the case at bar, there is no evidence sustaining the trial court's finding that Addendum No. 1 was a material or substantial change relieving appellee from default, and we do not consider that the Cotter case is controlling. We do not reach the question as to whether such finding is against the great weight and preponderance of the evidence, but if we were called upon to pass upon that question, we would likewise hold that the trial court's finding in that regard is against the great weight and overwhelming preponderance of the evidence:

With reference to the remaining grounds upon which appellee seeks to sustain the judgment, the record shows that while the architect did not give written notice to appellee that he had been awarded the contract, someone in appellant's office gave him oral notice that he was the successful bidder and requested that he obtain and file the required performance and payment bonds at which time the contract would be executed. Appellee made no objection that he had not received this notice in writing and, thereafter, set about in.

his efforts to obtain the required bonds. We do not believe that, under the circumstances of this case, the law would excuse appellee from his inability to obtain the bonds merely because he had received no written notice of that of which he had actual knowledge. If appellee was entitled to have the architect give him written notice of his successful bid, we believe that under these circumstances, the appellee waived his right to have notice in writing.

Appellee further seeks to avoid the forfeiture of his bid deposit on the grounds that the contract documents were never formally tendered to him. Appellee admitted during the trial of the case that someone in appellant's office had called him and told him that the contract would be executed when he presented the required bonds. If it can be said that this was not a tender of the contract on the part of appellant, we hold that under the circumstances here presented, a tender was unnecessary because the law does not require any party to do a vain or useless thing. Metro-Goldwyn-Mayer Distributing Corporation v. Cocke, 41 S.W.2d 645 (Tex.Civ. App., 1931, err. ref.). It is undisputed that appellee was unable to obtain the requisite bonds and he, therefore, could not enter into the contract or legally perform the construction work for the City of Crockett. Art. 5160, V.A.T.S.; Overstreet v. Houston County, 365 S.W.2d 409 (Tex.Civ.App., 1963, n. r. e.); and Globe Indemnity Co. v. Barnes, 288 S.W. 121 (Tex.Com.App., 1926). The record in this case does not show that appellee ever insisted upon an actual tender of the contract, and he admitted the reason the contract was not executed was his own inability to obtain the bonds. See Perry v. Little, 419 S.W.2d 198 (Tex. Sup., 1967).

The judgment of the trial court is reversed and rendered for appellant.