**LAKE MEDINA CONSERVATION SOCIETY, INC./BEXAR–MEDINA–ATASCOSA COUNTIES WCID NO. 1; and Canyon Regional Water Authority, Appellants,**

v.

**TEXAS NATURAL RESOURCE CONSERVATION COMMISSION; Bexar–Medina–Atascosa Counties WCID No. 1; and Canyon Regional Water Authority/Lake Medina Conservation Society, Inc., Appellees.**

No. 03–98–00058–CV.

Court of Appeals of Texas, Austin.

Oct. 29, 1998.

Mary Kathryn Sahs, Law Offices of Mary K. Sahs, Austin, for appellants.

Edmond R. McCarthy, Jr., McGinnis, Lochridge & Kilgore, L.L.P., Austin, Louis T. Rosenberg, Louis T. Rosenberg, P.C., San Antonio, Cynthia Woelk, Nancy E. Olinger, Asst. Attys. Gen., Natural Resources Div., for appellees.

Before POWERS, KIDD and B.A. SMITH, JJ.

POWERS, Justice.

The Lake Medina Conservation Society, Inc. ("LAMCOS") appeals from a district court judgment affirming an order of the Texas Natural Resource Conservation Commission (the "Commission"). The order amends a certificate of adjudication pertaining to water rights held by Bexar–Medina–Atascosa Counties WCID No. 1 ("BMA"). BMA and the Canyon Regional Water Authority ("CRWA") appeal from the district court order overruling jurisdictional pleas attacking LAMCOS' standing. We will affirm the judgment of the district court.

## THE CONTROVERSY

BMA is a water-control and improvement district, the boundaries of which encompass land in Bexar, Medina, and Atascosa counties. Before the Commission proceedings, BMA was authorized to divert for irrigation use 65,830 acre-feet of water impounded in its reservoir at Lake Medina.[1] On April 12, 1993, BMA applied for an amendment to its

---

1. BMA was actually authorized to divert a slightly greater volume of water, but this appeal concerns only the diversion of 65,830 acre-feet.

certificate of adjudication.[2] The requested amendment would authorize BMA to divert the 65,830 acre-feet for municipal and industrial uses as well as irrigation uses.

BMA gave notice of its application as required by section 11.132 of the Water Code and sections 295.151, 295.152, and 295.153 of the Commission's rules.[3] The Commission held public hearings in San Antonio on January 24, 1994, and in Austin on September 12 through 16 and September 19 and 20, 1994. Several parties admitted to the contested case, including LAMCOS, opposed the requested amendment.[4]

LAMCOS is an organization of about 600 members having a variety of interests in Lake Medina. Members include persons who own lakefront property or businesses on the lake and others who draw water from private wells near the lake. LAMCOS opposed BMA's application on the ground that the proposed additional uses would result in BMA's consistently taking the entire volume of water it is authorized to use (65,830 acrefeet), lowering the lake level and affecting adversely members' businesses, water wells, and recreational use of the lake.

After the hearings, the hearings examiner issued a Proposal for Decision ("PFD"). The Commission adopted the examiner's recommendations, imposed some additional requirements, and granted BMA's application in an order issued February 21, 1995 (the "1995 Order"). The order authorized BMA to apply its 65,830 acre-feet of water to "multiple uses," including irrigation, municipal,

and industrial uses.[5] The amendment did not specify a quantity of water authorized for any particular use: BMA might divert up to 65,830 acre-feet for any one of the specified purposes, or any combination of those purposes, so long as the aggregate amount of water diverted did not exceed 65,830 acrefeet. The amendment did not change the total volume of water BMA was authorized to divert, nor did it authorize any new diversion points.

The Commission so amended BMA's certificate although the agency agreed with LAMCOS that the permit would likely result in BMA more consistently diverting the full volume of water authorized in its certificate of adjudication. The Commission concluded, however, that BMA's water resources were a component of limited water resources in the region; and because of a trend in the area toward increased urbanization and reduced agricultural activity, a portion of BMA's water would be used beneficially to supplement limited municipal and industrial groundwater supplies in the region.

LAMCOS sued in district court for judicial review of the 1995 order.[6] LAMCOS contended the order was unlawful because the law required that BMA's certificate set forth a specific volume of water for each authorized use.[7] The district court agreed, reversed the 1995 Order, and "remanded [the matter] to the Commission for further proceedings."[8] No party appealed from the district court judgment.

---

2. A "certificate of adjudication" confirms the holder's authority to take water from a stream under a claim of right. *See* Tex. Water Code Ann. § 11.304–.324 (West 1988).

3. Texas Water Code Ann. § 11.132 (West 1988); 30 Tex. Admin. Code §§ 295.151, .152, .153 (1997).

4. Others admitted as parties included the TNRCC's Public Interest Counsel, Texas Parks and Wildlife Department, Bandera County, the City of Bandera, Bandera County Freshwater Supply District No. 1, Bexar Metropolitan Water District, Canyon Regional Water Authority, San Antonio River Authority, San Antonio Water System, Thousand Trails, Inc., Southside Alliance for Economic Development, Thelma Area Neighborhood Corporation, Thelka Neighborhood Association, Faron Bazzrea, and Chris Heyen.

5. Irrigation, municipal, and industrial uses are by statute made beneficial uses for which state water may be appropriated. *See* Tex. Water Code Ann. §§ 11.023, .024, .123 (West 1988).

6. Bandera County joined LAMCOS in challenging the 1995 order.

7. *See* Act of June 16, 1977, 65th Leg., R.S., ch. 870, § 1, 1977 Tex. Gen. Laws 2217 (Tex. Water Code Ann. § 11.023(e), since amended).

8. According to the Commission, the legislature has since authorized the Commission to approve "multiple use" permits without specifying exact quantities for each use. *See* Tex. Water Code Ann. § 11.023(e), .124(a)(4), .135(b)(5) (West 1988 & Supp.1998). *See also* Act of June 19, 1997, 75th Leg., R.S., ch. 1010, § 2.18, 1997 Tex. Gen. Laws 3626 (West).

After the remand, BMA withdrew its request to divert water to industrial use and moved that the Commission, "based on the existing record," authorize BMA to divert 19,974 acre-feet to municipal use and the balance to irrigation use. The Commission considered BMA's motion and the pending application at a public meeting held April 2, 1997. LAMCOS participated in the hearing through its attorney. The Commission, by order dated April 11, 1997 (the "1997 Order"), amended BMA's certificate as requested in the motion: BMA might divert up to 19,974 acre-feet of water for municipal use and the remaining 45,856 acre-feet for irrigation.

LAMCOS sued for judicial review of the 1997 Order, contending that after the 1995 Order was reversed BMA was required to file a new application and the Commission was required to hold a new evidentiary hearing thereon. The district court disagreed and sustained the 1997 Order. LAMCOS appeals now from the resulting judgment.

## DISCUSSION AND HOLDINGS

### Standing in the District Court

When LAMCOS sued in the present cause for judicial review of the Commission's 1997 Order, BMA, CRWA, and the County of Bandera intervened in defense of the order. The three intervenors filed in the trial court a joint plea to the jurisdiction challenging LAMCOS's standing to contest the 1997 Order. The attorney general filed a similar plea to the jurisdiction on behalf of the Commission. The district court overruled the pleas. BMA and CRWA appeal from the trial-court action and repeat their contention that LAMCOS lacks standing to challenge in district court the 1997 Order.[9]

■ The Texas Administrative Procedure Act ("APA") provides that a losing party in a contested case may, after exhausting administrative remedies, seek judicial review if the party is "aggrieved" by an agency action. Tex. Gov't Code Ann. § 2001.171 (West 1998). LAMCOS is not itself injured in fact by the agency decision. LAMCOS sued based upon the effect of the agency decision

upon members whom LAMCOS represented. For LAMCOS to maintain an action in that capacity, the record must show the following: (1) LAMCOS members otherwise have standing to sue in their own right; (2) the interests LAMCOS seeks to protect are germane to its organizational purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the action. Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 447 (Tex.1993).

■ We find the record supports the district court determination that LAMCOS may represent its members. The amendment, if upheld, would add an additional authorized use to BMA's certificate. The Commission concluded that BMA will likely divert more water in future years than it has in the past. LAMCOS is organized specifically to protect its members' interest in the lake; thus, LAMCOS' interest is germane to the organizational purpose. The relief requested by LAMCOS—invalidation of the amendment to BMA's certificate—does not require the participation of individual members in the appeal.

■ The only real dispute seems to be BMA's claim that members of the organization would not be entitled to sue in their own right. BMA argues that LAMCOS's interests are insufficient to show any specific or peculiar injury to itself or its members as a result of the Commission's amending BMA's certificate. The general rule is that standing depends upon some interest peculiar to the person or entity individually and not as a member of the general public. Hunt v. Bass, 664 S.W.2d 323, 324 (Tex.1984). Specifically, a plaintiff has standing to sue if: (1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which he complains; (2) there is a direct relationship between the alleged injury and the claim to be adjudicated; (3) the plaintiff has a personal stake in the controversy; (4) the challenged action has caused the plaintiff some injury in fact, either economic, recreational, environmental, or otherwise; or (5) the plaintiff is an appro-

9. Bandera County does not appeal from the district-court action.

priate party to assert the public interest in the matter as well as his own interest. *Billy B., Inc. v. Board of Trustees,* 717 S.W.2d 156, 158 (Tex.App.—Houston [1st Dist.] 1986, no writ); *Housing Auth. v. State ex rel. Velasquez,* 539 S.W.2d 911, 913–14 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.).

■ The members of LAMCOS have shown various interests in the lake, including ownership interest in lakefront property, that will be affected by the amendment. The impact of lower lake levels on owners of waterfront property, waterfront businesses, and private wells in the area constitutes a sufficiently particularized injury to distinguish the members' injury from that of the public at large. *See Hooks v. Texas Dep't of Water Resources,* 611 S.W.2d 417, 419 (Tex. 1981); *Texas Rivers Protection Ass'n v. Texas Natural Resource Conservation Comm'n,* 910 S.W.2d 147, 151 (Tex.App.—Austin 1995, writ denied).

We overrule BMA's and CRWA's points of error.

### Subject–Matter Jurisdiction in the Agency

■ LAMCOS contends that after the district court reversed the 1995 Commission order and remanded the contested case to the agency, the Commission lost jurisdiction to take any further action on BMA's 1993 application. LAMCOS points out that an administrative agency lacks authority to modify its previous final orders absent a statute conferring that authority. *See Sexton v. Mount Olivet Cemetery Ass'n,* 720 S.W.2d 129, 137 (Tex.App.—Austin 1986, writ ref'd n.r.e.). Once the Commission issued the 1995 Order and denied LAMCOS's motion for rehearing based on that order, LAMCOS argues, the Commission could take no further action on BMA's application. We disagree. *Sexton* is inapplicable.[10]

---

10. *Sexton* dealt with an agency's power to reopen administrative proceedings with a view toward reconsidering an earlier agency adjudicative order *that was never set aside on judicial review* and had, indeed, been in effect for three years. *Sexton v. Mount Olivet Cemetery Ass'n,* 720 S.W.2d 129, 138 (Tex.App.—Austin 1986, writ ref'd n.r.e.). In the present case, the 1995 order *was* set aside on judicial review.

11. LAMCOS seems to argue the trial court invalidated BMA's original application; however, the

It is a guiding principle of administrative law ... that "an administrative determination in which is embedded a legal question open to judicial review does not impliedly foreclose the administrative agency, after its error has been corrected, from enforcing the legislative policy committed to its charge."

*Prairie Constr. Co. v. Operating Eng'rs,* 425 U.S. 800, 806, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976) (citation omitted). The reviewing court decided the 1995 Commission order was not a legally effective order because of the error embedded therein. Following remand, the Commission was again charged with the statutory duty of assessing and determining BMA's application in light of the applicable statutes and rules. *See Lone Star Greyhound Park, Inc. v. Texas Racing Comm'n,* 863 S.W.2d 742, 746 (Tex.App.—Austin 1993, writ denied); *First Sav. & Loan Ass'n of Del Rio, Tex. v. Lewis,* 512 S.W.2d 62, 64 (Tex.Civ.App.—Austin 1974, writ ref'd n.r.e.); 2 Cooper, *State Administrative Law* § 9(B), at 773 (1965).[11] We hold accordingly.

### Commission Violation of Its Own Rules

In LAMCOS's first point of error, it contends the district court erred in affirming the 1997 Order because, after remand, the Commission could decide the contested case based solely upon a new or amended application filed by BMA, rather than BMA's original application.

The Commission has general jurisdiction over water rights in the state, including the issuance of permits and adjudication certificates. *See* Tex. Water Code Ann. § 5.013(a)(1) (West Supp.1998). The Commission is empowered to hold hearings and make decisions respecting its jurisdiction. *Id.* § 5.102 (West 1988).[12] As part of its

---

final judgment rendered by the trial court reverses only the Commission *order.*

12. Under its rules, the Commission, when presented with an application to modify existing water rights, is authorized to:

grant or deny [the] application in whole or in part, suspend the authority to conduct an activity ... dismiss proceedings, amend or modify [the] permit or order, or take any other appropriate action.

duties, the Commission must promulgate rules necessary to carry out its powers and duties. *Id.* § 5.103 (West 1988 & Supp. 1998).

LAMCOS contends the Commission violated two agency rules that govern the procedure by which applicants may amend their water-use permits.[13] Rule 295.2 provides:

> Upon express written or verbal approval of the applicant or the applicant's agent, any employee of the commission may make nonsubstantive changes in any documents submitted by the applicant. *Substantive changes in an application may be made only by the applicant or the applicant's agent who submitted the application and only in the form of a written, notarized amendment to the application ... provided, however, that no substantive changes may be made after an application has been filed with the chief clerk* of the commission by the executive director.

30 Texas Admin. Code § 295.2 (emphasis added). Rule 295.201 provides:

> *No substantive changes may be made* [to an application] *after an application has been filed* with the chief clerk of the commission by the executive director.

*Id.* § 295.201 (emphasis added).

LAMCOS contends that BMA's amended application, which deleted its request for industrial use and specified a quantity of water for municipal use, amounts to a "substantive change." [14] LAMCOS reasons that Commission rules 295.2 and 295.201 must be interpreted and enforced to require BMA to withdraw its application and submit a new, amended application.

■ We hold the Commission did not abuse its discretion by departing from a

strict adherence to what Rule 295.2 and Rule 295.201 require. The two rules were not intended primarily to confer procedural benefits upon a party to the case; they were intended rather to aid the Commission in the efficient processing of such applications. *See Smith v. Houston Chem. Servs., Inc.,* 872 S.W.2d 252, 259 (Tex.App.—Austin 1994, writ denied); *see also* 11 Tex. Reg. 2323, 2324 (1986) (noting that both Rule 295.2 and Rule 295.201 were revised in response to comments from the Commission's staff concerning the elimination of unnecessary and incomplete provisions). The Commission was therefore free to relax the requirements of the rules, and the agency's doing so in a particular case is "not reviewable except upon a showing of substantial prejudice to the complaining party." *Smith,* 872 S.W.2d at 260 (citations omitted); *see also* Peter Raven–Hansen, *Regulatory Estoppel: When Agencies Break their Own "Laws,"* 64 Tex. L.Rev. 1, 23 (1985).

It does not appear that any prejudice resulted from the Commission's action. We overrule LAMCOS' first point of error.

### Agency Refusal to Reopen the Case After Remand

LAMCOS contends the Commission, by sustaining after remand BMA's motion to decide the contested case based upon "the existing record," deprived LAMCOS of its right to a full and fair hearing. LAMCOS complains first that BMA's 1993 application did not put interested parties on notice of BMA's intention to designate 19,974 acre-feet of water for municipal use. Moreover, LAMCOS contends, the Commission improperly based its 1997 order on outdated evidence. To prevail, LAMCOS must show the Commission abused its discretion in not requiring

---

30 Tex. Admin. Code § 50.17(a) (1997).

**13.** The rules cited actually govern applications for *new* permits; however, Rule 295.71 states that applications to *amend* existing permits "shall be recorded in the same manner" as a new application. *See* 30 Tex. Admin. Code § 295.71 (1997).

**14.** LAMCOS relies on a Commission article that gives examples of "substantive changes" in the context of Rule 295.201 and states the consequences of changing a permit:

> *Substantive changes include,* but are not limited to, a change in the identity of the proposed water user, increase in the requested appropriative amount of water, a significant change in diversion point or rate, or change in purpose or place of use. *If a substantive change is necessary, the applicant must withdraw his application and resubmit a new, amended application.*

See TNRCC's *A Regulatory Guidance Document to Applications to Divert, Store or Use State Water,* 18 (June 1995).

a new proceeding, resulting in prejudice to LAMCOS' substantial rights. *See* Tex. Gov't Code Ann. § 2001.174(2)(A) (West 1998).

■ We need not consider whether the Commission abused its discretion in the matter of notice. LAMCOS has shown no prejudice resulting from want of notice. LAMCOS participated, through its legal representative, in the April 2, 1997, meeting in which the Commission determined to decide the contested case based on "the existing record." Moreover, LAMCOS failed to explain at the April 2 meeting and does not explain here how the original proceedings, in which the Commission assessed the effect of a permit application that would allow BMA to divert *all* of its appropriated water for municipal use, did not implicitly encompass the effect of BMA using only *part* of that appropriated water for municipal use. During the hearing on the application, BMA's authority to divert the entire 65,830 acre-feet of water for municipal use was essentially uncontested. The hearings focused on whether the application met the statutory criteria [15] that governed the proceeding,

such as whether the application contemplated the application of water to a "beneficial use"; whether the use would impair existing water rights or vested riparian rights; whether the use would be detrimental to the public welfare, and what effect the use would have on bays and estuaries, instream uses,[16] and fish and wildlife habitats.[17]

LAMCOS contends the Commission abused its discretion by issuing the 1997 order based on outdated evidence. LAMCOS argues that the findings of fact and conclusions of law [18] stated in the 1995 order, and inferred from the evidence in "the existing record," were deficient because they

> do not take into consideration the changes that have taken place in the watershed in question since 1994, with respect to the water level in Lake Medina, the drought in the area, increased knowledge of the relationship between Lake Medina and the Edwards Aquifer, or the changes in demands for the water.

■ We conclude the agency did not abuse its discretion in declining to reopen the evidence.[19] A decision whether to reopen the

---

15. The commission shall grant [an] application [for proposed water rights] only if:
   (1) the application conforms to the requirements of [Chapter 11 of the Water Code] and is accompanied by the prescribed fee;
   (2) unappropriated water is available in the source of supply;
   (3) the proposed appropriation:
      (A) contemplates the application of water to any beneficial use;
      (B) does not impair existing water rights or vested riparian rights; and
      (C) is not detrimental to the public welfare; and
   (4) the applicant has provided evidence that reasonable diligence will be used to avoid waste and achieve water conservation as defined by Subdivision (8)(B), section 11.02, of [the Water Code].
Tex. Water Code Ann. § 11.134(b) (West 1988).

16. Tex. Water Code Ann. § 11.147 (West 1988).

17. Tex. Water Code Ann. § 11.152 (West 1988).

18. The 1997 final order sets forth the following conclusions of law:
   (1) the contemplated use of water for municipal and industrial purposes constituted a beneficial use of state water;
   (2) the Commission adequately assessed the effects of the amendment upon Texas bays and

estuaries, existing in-stream uses, water quality in the state, and fish and wildlife habitats;
   (3) the amendment would not impair existing water rights or vested riparian rights;
   (4) the amendment would not be detrimental to the public welfare;
   (5) BMA had provided evidence that it would use reasonable diligence to avoid waste and achieve water conservation as defined by section 11.002(8)(B) of the Water Code; and
   (6) BMA had demonstrated reasonable impending need or demand for water for municipal and industrial purposes.
Findings of fact stated in the order support the foregoing determinations.
Item (5) is not, of course, a conclusion of law. The fact that a party has "provided evidence" on a matter is not a finding of material fact; it determines nothing from the evidence "provided." *See* John Powers, *Judicial Review of the Findings of Fact Made By Texas Administrative Agencies in Contested Cases,* 16 Texas Tech L.Rev. 475, 476–83 (1985).

19. The question of whether the Commission properly exercised the power to reopen the case after remand is independent of the question of whether the Commission *had* that statutory power. *Sexton* makes it clear that the question of whether an agency has the power to reopen administrative proceedings, with a view toward reconsidering its earlier adjudicative order, is a

evidence is within agency discretion and is reserved for a variety of extraordinary circumstances. *See* Koch, *Administrative Law and Practice,* § 5.71[1] at 273 (1998). In cases like the present, where re-opening the evidence is urged following judicial remand of a contested case to an agency, "the agency need consider only those parts of its decision which were rejected by the reviewing court." *Id.* at 276. The Commission, on remand, complied in its 1997 order with the reviewing court's decision that specific volumes of water for each use must be set out in the final order. Moreover, the Commission could reasonably conclude from the record that the changed circumstances urged by LAMCOS did not affect the fundamental ground of decision reflected in the findings of fact and conclusions of law stated in the 1995 order: that in the circumstances shown municipal and irrigation uses must have priority, as a matter of policy, over recreational use and well-water availability—a basis of the agency decision not rejected by any court. *See Cross–Sound Ferry Servs., Inc. v. I.C.C.,* 934 F.2d 327, 332 (D.C.Cir.1991); *Alvarez–Madrigal v. I.N.S.,* 808 F.2d 705, 707 (9th Cir. 1987); *Sunset Square Ltd. v. Miami County Bd. of Revision,* 50 Ohio St.3d 42, 552 N.E.2d 632, 635 (Ohio 1990).

We hold the Commission did not abuse its discretion.

### Impact on Fish and Wildlife Habitats

In its final point of error, LAMCOS contends the district court erred in affirming the 1997 Order because the Commission failed to determine the impact a reduction in water levels would have upon fish and wildlife habitats in the affected area.

Commission Rule 297.49 states as follows:

In its consideration of an application for a permit or amendment to store, take, or divert state water, the commission shall

assess the effects, if any, of the issuance of the permit on fish and wildlife habitats.

30 Tex. Admin. Code § 297.49 (1997).

Based on the evidence received in the hearing on BMA's original application, the Commission concluded that granting BMA's application for a multi-use permit would have "no significant impact upon fish and wildlife habitats in Diversion and Medina Lakes." The Commission based this finding of ultimate fact on evidence regarding affects on fish and wildlife habitats in the event BMA more consistently diverted all of its authorized 65,830 acre-feet of water each year under the multi-use permit.

After remand from the district court, the Commission concluded, based on "the existing record," that BMA's amended application, seeking a more limited amendment of its existing diversion rights, would likewise have no significant impact upon fish and wildlife habitats in the area. LAMCOS does not suggest how BMA's new application, which gives BMA *less flexibility* in its diversion of water, could result in a different or more severe impact upon fish and wildlife habitats.

■ Because LAMCOS has failed to show substantial prejudice resulting from the Commission decision, we overrule LAMCOS' final point of error.

We affirm the district court judgment.

■

---

question "to be determined by an interpretation of the statute that vests the agency with administrative power." *Sexton,* 720 S.W.2d at 138.

Water Code § 11.122(b) gives the Commission authority to amend a previously issued order based on evidence related to the impact the change will have upon other water-right holders

and the environment. Tex. Water Code § 11.122(b) (West Supp.1998). A statute that authorizes the amendment of a previously issued permit grants an "express and specific . . . power to reopen an administrative proceeding." *Sexton,* 720 S.W.2d at 139.