TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00488-CV






El Paso Community Partners, Appellant



v.



B&G/Sunrise Joint Venture; The California Sierra Group Corp.; Garry P. Mauro,


Individually and in his capacity as former Commissioner of General Land Office;


William F. Warnick, Individually and in his capacity as member of State Land


Board; C. Louis Renaud, Individually and in his capacity as member of State


Land Board; and David Dewhurst, in his capacity as Commissioner of


the General Land Office, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 98-12781, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING 







 Appellant El Paso Community Partners filed suit against appellees (1) seeking, among
other things, that the district court declare void a purchase contract for the sale of state lands
between B&G/Sunrise Joint Venture (B&G) and the State of Texas. Appellant alleged that a
material and substantial variance between the State's bid specifications and the contract awarded
rendered the contract void or invalid. Concluding that appellant lacked standing to challenge the
validity of the contract, the district court granted appellees' plea to the jurisdiction and motion to
dismiss the cause with prejudice. We will affirm.


BACKGROUND


 Although this case turns solely on a question of law, we will summarize the facts
to provide context. The State of Texas Permanent School Fund owned over 4,000 acres of land
in eastern El Paso County. The School Land Board, acting through the General Land Office and
its then-Commissioner Garry Mauro, decided to sell the property via a competitive bid process. 

 Appellant was one of four entities that met qualifications and submitted a purchase
bid under the option method. The bid solicitation provided that a "bid must include a firm
contract amount and other material terms. Other elements of the contract will be subject to
negotiation." (Emphasis added.) Appellant bid $66,704,966. Appellee B&G bid $67,055,000. 
The School Land Board, acting through appellees Mauro, William F. Warnick, and C. Louis
Renaud, selected B&G as the winning bidder. After further negotiations, B&G and the State
signed a contract on August 28, 1998. 

 In November 1998, appellant filed suit alleging that the contract "deviated
materially" from the bid solicitation. B&G filed special exceptions, which the trial court granted. 
Appellant amended its allegations and in its third amended petition sought declarations that: (1)
Mauro lacked authority to sign the contract; (2) Warnick and Renaud were acting outside the
scope of their authority in consenting to Mauro's signing of the contract; (3) Mauro's successor,
appellee David Dewhurst, lacked authority to continue to negotiate the contract; (4) B&G's bid
was invalid and deemed rejected; and (5) the contract and deeds executed thereunder were void. 
Appellant did not allege fraud, collusion, or irregularities in the solicitation or bidding process. 


 Appellees filed a plea to the jurisdiction and a motion to dismiss with prejudice. 
In its order dismissing appellant's suit, the district court stated, "The Court finds that Plaintiff El
Paso Community Partners does not have standing to seek the voiding of the contract, at issue in
this suit . . . ." After the trial court denied its motion for new trial, appellant brought this appeal.


DISCUSSION


 In its sole issue, El Paso Community Partners contends that the contract entered
into between the State and B&G is materially different than that for which bids were solicited and
that under these circumstances, appellant, as a qualified bidder, has standing to challenge the
validity of the contract entered into between the State and the highest bidder. 

 Standing is an element of a court's subject matter jurisdiction. See Texas Ass'n of
Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 444-45 (Tex. 1993). The plaintiff has the burden
of alleging facts that affirmatively demonstrate a court's jurisdiction to hear a cause. See id. at
446. A plea to the jurisdiction challenges a trial court's authority to hear a case by alleging that
the factual allegations in the plaintiff's pleadings, when taken as true, fail to invoke the trial
court's jurisdiction. See Bybee v. Fireman's Fund Ins. Co., 331 S.W.2d 910, 917 (Tex. 1960);
Firemen's Ins. Co. v. Board of Regents of the Univ. of Tex. Sys., 909 S.W.2d 540, 541 (Tex.
App.--Austin 1995, writ denied). Dismissing a cause of action based on a plea to the jurisdiction
is proper only when incurable jurisdictional defects are shown on the face of plaintiff's pleadings. 
See Curbo v. State, 998 S.W.2d 337, 341 (Tex. App.--Austin 1999, no pet.); Flowers v. Lavaca
County Appraisal Dist., 766 S.W.2d 825, 827 (Tex. App.--Corpus Christi 1989, writ denied). 

 Because the question of standing is a legal question, we review de novo a trial
court's ruling on a plea to the jurisdiction. See Mayhew v. Town of Sunnyvale, 964 S.W.2d 922,
928 (Tex. 1998); Board of Regents, 909 S.W.2d at 542. In reviewing a trial court order
dismissing a cause based on a plea to the jurisdiction, we "construe the pleadings in favor of the
plaintiff and look to the pleader's intent." Texas Air Control Bd., 852 S.W.2d at 446; Pearce v.
City of Round Rock, 992 S.W.2d 668, 671 (Tex. App.--Austin 1999, pet. denied). 

 As a general rule, to demonstrate standing a party must allege some interest
peculiar to it individually and not as a member of the general public. See Hunt v. Bass, 664
S.W.2d 323, 324 (Tex. 1984); Lake Medina Conservation Soc., Inc./Bexar-Medina Atascosa
Counties WCID No. 1 v. Texas Natural Resource Conservation Comm'n, 980 S.W.2d 511, 515
(Tex. App.--Austin 1998, pet. denied). Specifically, a plaintiff has standing to sue if: (1) the
plaintiff has sustained, or is immediately in danger of sustaining, some direct injury as a result
of the complained-of wrongful act; (2) there is a direct relationship between the alleged injury and
the claim to be adjudicated; (3) the plaintiff has a personal stake in the controversy; (4) the
challenged action has caused the plaintiff some injury in fact, either economic, recreational,
environmental, or otherwise; or (5) the plaintiff is an appropriate party to assert the public interest
in the matter as well as the plaintiff's own interest. See Lake Medina, 980 S.W.2d at 515-16;
Billy B., Inc. v. Board of Trustees, 717 S.W.2d 156, 158 (Tex. App.--Houston [1st Dist.] 1986,
no writ); Housing Auth. v. State ex rel. Velasquez, 539 S.W.2d 911, 913-14 (Tex. Civ.
App.--Corpus Christi 1976, writ ref'd n.r.e.). An exception to this general rule allows "a
taxpaying citizen to maintain an action in a court of equity to enjoin public officials from
expending public funds under a contract that is void or illegal." Osborne v. Keith, 177 S.W.2d
198, 200 (Tex. 1944); see Texas State Employees Union/C.W.A. Local 6184 v. Texas Workforce
Comm'n, 16 S.W.3d 61, 68 (Tex. App.--Austin 2000, no pet.). This exception is limited to
instances in which the contract is illegal or void and not merely voidable at the option of the
public official. See Osborne, 177 S.W.2d at 200.


Taxpayer Standing to Enjoin Performance of Void or Illegal Contract

 Appellant's petition sought declarations that the State's agents were acting without
authority and that the contract was void because it did not contain a final takedown schedule as
the bid specifications required. (2) Appellant contended that the State's signing the contract was
therefore illegal and that the contract was void under the terms of the solicitation. We first
examine the relevant sections of the solicitation to determine whether appellant can meet the
requirements for standing under the exception discussed in Osborne v. Keith. See id. 

 Appellant argues that because the contract did not contain a takedown schedule,
appellees failed to reach a final agreement as required by the solicitation and that the contract was
therefore void according to the terms of the solicitation. Taking as true appellant's factual
allegations that the takedown schedule did not comply with the terms of the solicitation, we look
to see whether the terms of the solicitation prohibited the parties from continuing to negotiate if
they failed to reach an agreement by a certain date. 

 Appellant quotes two sections of the solicitation to support its position that the
parties were required to reach a final agreement by a certain date. One section provides: 


The winning Bidder shall have 45 days, beginning on the date of the bid award,
to agree with the State on the language of the final purchase or option Contract. 
The SLB, at its option, may extend this period of time. If no contract has been
finalized by the end of that period the State may reject the bid and keep the
Property or dispose of the Property in any lawful manner.



The solicitation finally states:



If the winning Bidder and the State fail to negotiate a contract in the time-frame
required, then $25,000 of the Earnest Money on deposit shall be forfeited to the
State; and the Property may be re-bid at a later date or otherwise disposed of in
accordance with applicable law.




 Appellant did not allege that the solicitation was ambiguous. Therefore, we
construe the solicitation, as we would any other document, according to its plain meaning. See
Northern Natural Gas Co. v. Conoco, Inc., 986 S.W.2d 603, 606 (Tex. 1998) (interpreting
contract according to its plain meaning). 

 The first quoted paragraph guarantees the winning bidder at least forty-five days
in which to negotiate an agreement and provides that the State at its discretion may grant the
winning bidder more time. It does not limit the number or length of extensions that the State may
grant. The last quoted paragraph provides that if the State and B&G failed to reach an agreement,
$25,000 of B&G's earnest money would be forfeited. Nothing in the terms of the solicitation
requires that the contract be finalized by a certain date or that failure to meet that deadline
deprived the State's agents of authority to continue negotiating with B&G. The language
regarding the State's options upon failure to reach an agreement permits--but does not require--the
State to reject the bid and keep the property or dispose of it in some other manner. These facts
do not render the contract void. Because appellant's petition did not allege facts showing a void
contract or that the State's agents were acting illegally or beyond their authority, we conclude that
appellant failed to allege facts bringing it within the exception discussed in Osborne. 


Public Interest Standing and Injury from Complained-Of Wrong

 Appellant also contends that it has standing to challenge the contract both on the
grounds of a public interest and its own injury. Appellant contends that it has a particular interest
by virtue of its being a qualified bidder and that it was injured by "the loss of the right to have
an opportunity to obtain the property." We disagree that appellant has any interest of its own to
assert or that appellant's injury, if any, arose from the complained-of wrong. 

 Appellant claims its status as a "qualified bidder" gives it an interest in whether
the ultimate winning bidder's contract complies with the terms of the solicitation. Appellant bases
this argument, in part, on its claim of a reliance interest based on its expenditure of time and
money in preparing and submitting its bid. But the terms of the solicitation preclude appellant
from making a reliance claim. The solicitation provides in underlined, bold, capital letters: "BY
ITS PARTICIPATION IN THIS BID PROCESS, EACH ENTITY . . . ASSUMES THE
RISK THAT IT WILL EXPEND TIME, MONEY AND EFFORT IN THIS PROCESS
WITHOUT OBTAINING ANY INTEREST IN THE BID PROPERTY AS A RESULT." 
(Emphasis added.) (3) 

 Appellant's status as a participating qualified bidder did give appellant a particular
interest in assuring that bids were made and evaluated fairly and according to the terms set forth
in the solicitation. (4) But appellant's petition did not allege any irregularities in the solicitation,
bidding, or bid selection, nor did appellant contend that B&G submitted the highest and best bid
because appellees engaged in fraud or collusion. If the State were required to repeat the bid
process, appellant would have no special status and would be required to qualify and submit a bid
just as any other contender.

 As for the contract itself, generally someone who is not a party to an agreement has
no interest in the terms of that contract. See Imco Oil & Gas v. Mitchell Energy Corp., 911
S.W.2d 916, 920 (Tex. App.--Fort Worth 1995, no writ) (non-party had no right to enforce
contract terms). Appellant's bid was an offer to enter into a contract, which the State could accept
or reject. See Sedona Contracting, Inc. v. Ford, Powell & Carson, Inc., 995 S.W.2d 192, 197
(Tex. App.--San Antonio 1999, pet. denied); Urban Elec. Services, Inc. v. Brownwood Indep. Sch.
Dist., 852 S.W.2d 676, 678 (Tex. App.--Eastland 1993, no writ); Wright v. Interfirst Bank Tyler,
N.A., 746 S.W.2d 874, 876 (Tex. App.--Tyler 1988, no writ). Once rejected, an offeror has no
further rights regarding any subsequent contract the offeree may enter. See Imco, 911 S.W.2d
at 920.

 Here the bid solicitation stated that the bid process was subject to certain statutory
requirements. These statutes--cited by appellant in its petition--limited the School Land Board's
discretion in accepting or rejecting bids. Section 32.109 of the Natural Resources Code requires
that "[f]or each tract offered for sale, lease, or commitment to a contract, the board must accept
the best bid that meets the minimum requirements set by the board or by law or reject all bids." 
Tex. Nat. Res. Code Ann, § 32.109 (West Supp. 2000) (emphasis added). Section 51.051 of the
Natural Resources Code mandates that all sales of Permanent School Fund land "shall be made
by or under the direction of the school land board to the applicant who submits the highest bid for
the land . . . ." Id. § 51.051 (West 1978) (emphasis added). 

 In its petition, appellant did not allege that B&G's bid failed to meet minimum
requirements at the time it was submitted or that it lacked a firm contract amount or other material
terms as required by the bid solicitation. Appellant does not refute that B&G submitted the "best
bid that [met] the minimum requirements" or that B&G was the "applicant who submit[ted] the
highest bid," nor does appellant claim that its bid was higher, better, or unfairly rejected. Once
appellant's bid was rejected, its interest ceased. Thus, any "injury" appellant sustained from "the
loss of the right to have an opportunity to obtain the property" occurred at the time its bid was
rejected and not as a result of alleged disparities between the terms of the contract and the terms
of the solicitation.

 Appellant argues that unsuccessful bidders are in the best position to police whether
state contracts comply with the terms of their solicitations and that if unsuccessful bidders are not
allowed to bring these claims, no private party would have standing to complain. While such a
prudential argument, if true, might be persuasive, it fails to overcome established jurisprudence
that requires a party to allege an interest unique to it in order to bring suit. (5) 


CONCLUSION


 Because appellant's bid was rejected and appellant's petition did not implicate the
fairness or propriety of the solicitation or bidding process, appellant's petition failed to allege an
injury resulting from the complained-of wrong or an interest in the subject contract as anything
other than a member of the general public. Thus, appellant has failed to satisfy the requirement
of pleading facts that allege standing so as to invoke the trial court's jurisdiction. We overrule
appellant's sole issue and affirm the order of dismissal. 



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith 

Affirmed

Filed: July 27, 2000

Publish
1. In its third amended original petition, appellant named as defendants B&G/Sunrise Joint
Venture; the California Sierra Group Corporation; Garry Mauro individually and in his capacity
as former Commissioner of the General Land Office; William F. Warnick individually and in his
capacity as a member of the State Land Board; C. Louis Renaud individually and in his capacity
as a member of the State Land Board; and David Dewhurst in his capacity as Commissioner of
the General Land Office. We will refer to the trial court defendants collectively as appellees. 
2. The solicitation provides for the parties' negotiating a price/payment formula and states that
"[t]he initial takedown schedule shall address minimum size, frequency, and proposed takedown
sequence for the property." The contract indicates that a preliminary takedown schedule is
attached as "Schedule 5 and the Master Plan." Schedule 5 sets out the payment amount for each
year of the twenty year contract but does not specify which land will be transferred each year. 
According to the contract, the master plan was submitted for State approval as a condition of the
initial takedown and indicates B&G's development plan for the property. By the contract's terms,
the parties agreed to refine the takedown schedule and master plan by December 31, 1998.
3. We find that appellant's reliance on cases involving associational standing is misplaced. See,
e.g., Texas Highway Comm'n v. Texas Assoc. of Steel Importers, Inc., 372 S.W.2d 525, 530-31
(Tex. 1963); Texas Indus. Traffic League v. R.R. Comm'n, 628 S.W.2d 187, 204-05 (Tex.
App.--Austin), rev'd, 633 S.W.2d 821 (Tex. 1982), overruled, Texas Ass'n of Bus. v. Texas Air
Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). Associations such as the Texas Association of
Steel Importers and the Industrial Traffic League exist to further the interests of their members,
whereas appellant is a private entity that champions no interest other than its own pecuniary gain.
4. At oral argument, appellant contended that its status as a "qualified bidder" gave it an
interest in the entire "bid process," which the solicitation defines as a five-part process beginning
with qualification of bidders and ending with performance of the contract. Although we are of
the opinion that appellant's argument would lead to the unworkable result that appellant could
challenge this twenty-year contract in the nineteenth year of performance, we need not address
this issue because the record contains no indication that appellant made such an argument in the
trial court. See Tex. R. App. P. 33.1. 
5. We note that a successful bidder, as a party with a particular interest in the contract, may be
able to bring suit if the contract entered into does not correspond to the contract for which the
party submitted a bid. See, e.g., City of Crockett v. Murdock, 440 S.W.2d 864, 867 (Tex. Civ.
App.--Tyler 1969, writ ref'd n.r.e.); Cotter v. Casteel, 37 S.W. 791, 793-94 (Tex. Civ.
App.--Galveston 1896, writ ref'd).



st unique to it in order to bring suit. (5) 


CONCLUSION


 Because appellant's bid was rejected and appellant's petition did not implicate the
fairness or propriety of the solicitation or bidding process, appellant's petition failed to allege an
injury resulting from the complained-of wrong or an interest in the subject contract as anything
other than a member of the general public. Thus, appellant has failed to satisfy the requirement
of pleading facts that allege standing so as to invoke the trial court's jurisdiction. We overrule
appellant's sole issue and af