## VICTIMS

v.

## FUNDS, THIRD PARTIES, AND REEVES COUNTY, TEXAS.

No. P-88-CA-51.

United States District Court, W.D. Texas Pecos Division.

May 17, 1989.

David Horton, Weslaco, Tex., for plaintiffs.

Ace Pickens, Austin, Tex., for defendants American Nat. Red Cross and the Ector County Chapter of the American Nat. Red Cross.

## MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

BUNTON, Chief Judge.

BEFORE THIS COURT is the Motion of Defendant, the American Red Cross, for Summary Judgment in the above-captioned cause. Plaintiffs timely responded to Defendant's Motion. Having considered the arguments and authorities presented by the parties, the Court is of the opinion that Defendant's Motion is meritorious and should be granted.

## FACTUAL BACKGROUND

The cause of action at bar centers around a violent storm which rent great damage and suffering upon the West Texas town of Saragosa and its inhabitants. In the aftermath of the now infamous tornado of May 22, 1987, the American Red Cross, one of many governmental and non-governmental agencies participating in relief efforts, solicited money from the American public for food, clothing, essential household furnishings, money, health care, building supplies and labor for the victims of the storm. The

1. Judge Pigman is currently serving as the County Judge for Reeves County.

2. The other Defendant served with process was the Ector County Chapter of the American National Red Cross. Plaintiffs waited until the 140th day after filing their Second Amended Petition to serve this Defendant.

response was heartwarming; $1,004,819.00 was contributed in aid to a little-known town west of the Pecos River. Of that sum, at least $980,166.00 was spent or committed to assist the renaissance of Saragosa. But Saragosa did not live happily ever after. This suit was instituted by some of the victims of the 1987 tornado, claiming that the Red Cross and others were negligent in distributing the disaster relief funds.

Originally filed in the 143rd Judicial District Court of Reeves County, Texas against Reeves County and Judge Pigman [1], the Plaintiffs' case was based upon alleged violations of the Texas Open Records Act and negligent distribution of disaster relief funds collected by Reeves County. In November of 1988 the Honorable Bob Parks of the 143rd Judicial District Court of Reeves County, Texas, approved a settlement between the original parties. Shortly thereafter, Plaintiffs filed their Second Amended Petition which asserted claims against "Third Parties who solicited, collected, spent, administered and maintained" disaster relief funds. Defendant Red Cross was the lone "third party" specifically mentioned in the Second Amended Petition and only one of two Defendants served with process [2]. The Red Cross timely removed the action, asserting that this Court maintains federal question jurisdiction over Plaintiffs' claims [3].

## STANDARD ON MOTION FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Further, subsection (e) of Rule 56 provides:

3. As Defendant Red Cross correctly points out, this Court also has diversity jurisdiction over the matter since Plaintiffs are citizens of Texas and the Republic of Mexico and Defendant is deemed a citizen of the District of Columbia.

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.

Thus, the focus of this Court is upon disputes over material facts; facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987), and the cases cited therein.

The Supreme Court's 1986 trilogy of summary judgment cases clarified the test for granting summary judgment. In *Anderson v. Liberty Lobby*, the Court stated that the trial court must consider the substantive burden of proof imposed on the party making the claim. In the case before this Court, the victims have the burden with respect to their claims; the Defendant has the burden with respect to certain defenses it raises. The Court in *Anderson v. Liberty Lobby* defined "material" as involving a "dispute over facts which may affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby* requires this Court to substantively evaluate the evidence offered by the moving and non-moving party to determine whether the evidence raises a "material" fact question which is "genuine."

In a second case, the Supreme Court reiterated that where the party moving for summary judgment has established *prima facie* that there is no genuine issue as to any material fact, the non-moving party must then come forward with "specific facts" showing a genuine issue for trial. It must be "more than simply ... that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 89 L.Ed.2d 538, 106 S.Ct. 1348 (1986). A third case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) held that where the moving party shows that the opposing party is unable to produce evidence in support of its case, summary judgment is appropriate. In *Celotex Corp.*, it was not necessary for the motion for summary judgment to be supported by affidavits or other material specifically negating the non-moving party's claim so long as the District Court was satisfied that there was an absence of evidence to support it. At that point the burden shifted to the non-moving party to produce evidence in support of its claims; if it did not produce any, summary judgment was required.

This Court has demonstrated its willingness to allow a non-moving party his day in court in borderline cases where under governing law or reasonable extensions of existing law, the hearing of some testimony would be helpful to understand the proper application of the law. The issues raised by Defendant's Motion involve matters of law which the Court finds appropriate for summary judgment.

## DISCUSSION

In their action, Plaintiffs seek an accounting and return of disaster relief funds from the Red Cross and other, unidentified "third parties," claiming that the Defendants, as "Trustees for such constructive trusts as include [the disaster relief] funds," owed a fiduciary duty to the Plaintiffs. Underlying Plaintiffs' claims is the premise that the Red Cross owed a duty to the Plaintiffs to distribute all monies donated by the public to the victims of the Saragosa tornado. The Court has found no such duty imposed upon the Red Cross.

The Red Cross is a non-profit organization instituted in the United States in 1905 "to carry on a system of national and international relief in time of peace so as to mitigate the sufferings caused by pestilence, famine, fire, floods, and other great national calamities, and to devise and carry on measures for preventing the same." 36 U.S.C. Section 3. As such, it provides care and assistance as an outright gift to victims such as the citizens of Saragosa with no expectation of repayment. Its services

are provided according to need, regardless of the donations received by the American public specifically for the purpose to be served.

■ As to Plaintiffs claims for an accounting, the Court finds this issue essentially moot since the Red Cross is already required to make a report of all receipts and expenditures it processes in a fiscal year to the Secretary of Defense. In fact, the Red Cross pays for the privilege of this yearly auditing process. The Department of the Defense audits each year's report and transmits a copy of the audited report to Congress. 36 U.S.C. Section 6. Copies of the Department of Defense audits for fiscal years 1987 and 1988 are public information and can be obtained by writing to the Chief Financial Officer of the American National Red Cross[4]. The Court directs the Plaintiffs to these reports for the accounting sought in this proceeding.

■ As for Plaintiffs claims for a return of funds, the Court is unable to discern a duty on the part of the Red Cross to distribute all funds collected for a particular cause to the victims involved. The Defendants point to analogous law in the area of charitable trusts that a mere member of the general public, even though a taxpayer or potential beneficiary of services to be rendered, has no standing to maintain a suit to enforce a gift or to prevent a violation of a charitable trust. *See: Restatement (Second) of Trusts,* Section 391 (comments c & d); Note, "Charitable Trust Enforcement," 56 Va.L.Rev. 716, 722 (1970); *Gray v. Saint Matthews Cathedral Endowment Fund, Inc.,* 544 S.W.2d 488, 490 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.)[5]. Although the monies collected by the Red Cross do not represent a charitable trust, the factual situation at bar is similar to the situation of a charitable trust. It is

the finding of this Court that the victims of a disaster targeted for relief by the Red Cross are not entitled to sue for a disbursement of relief funds for the reason that they do not have a claim to such funds. Perhaps the donors of such funds could sue under a similar theory, but the recipients have neither a contract with nor a promise from the Red Cross that they shall receive disaster aid. For those reasons, the Court finds that Plaintiff's claim fails to stave off summary judgment. Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment is hereby and in all things GRANTED.

---

4. The address of the Chief Financial Officer is as follows:
   American National Red Cross
   17th and D, Northwest
   Washington, D.C. 20006.

5. That Court, in dicta, stated:
   Where a charity is for the benefit of the public at large or a considerable portion of it, and the language of its creation is such that no particular individuals can be pointed out as the objects to be benefitted by it, the official representative of the public is the only party capable of vindicating the public's rights in connection with such charity. [Cites omitted.] And, if members of the public at large could sue in such cases, the charities and their trustees could be subject to undue harassment.