NO. 07-06-0196-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JULY 20, 2006



______________________________




JUAN MOISES BLANCO, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 22ND DISTRICT COURT OF CALDWELL COUNTY;



NO. 2003-272; HONORABLE TODD BLOMERTH, JUDGE



_______________________________



Before REAVIS and CAMPBELL and HANCOCK, JJ.

ABATEMENT AND REMAND


 Pursuant to a plea of guilty, appellant Juan Moises Blanco was convicted of
possession of a controlled substance and punishment was assessed at two years
confinement and a $1,000 fine, suspended for five years. The clerk's record and reporter's
record have both been filed. Appellant's brief was due to be filed June 16, 2006, but has
yet to be filed. Also, no motion for extension of time has been filed. By letter dated June
21, 2006, this Court notified appellant's appointed counsel, Kelley McCormick, of the defect
and also explained that if no response was received by July 3, 2006, the appeal would be
abated pursuant to Rule 38.8(b) of the Texas Rules of Appellate Procedure. Counsel
responded by facsimile indicating inaccuracies in the reporter's record and anticipated filing
a motion for extension of time by July 10. (1) To date, no formal motion has been filed with
this Court.

 Therefore, we now abate this appeal and remand the cause to the trial court for
further proceedings pursuant to Rule 38.8(b)(2) and (3) of the Texas Rules of Appellate
Procedure. Upon remand, the trial court shall immediately cause notice of a hearing to be
given and, thereafter, conduct a hearing to determine the following: 

 1. whether appellant desires to prosecute the appeal;


 whether the reporter's record is accurate (see Rule 34.6(e)); and


 3. whether appellant has been denied effective assistance of counsel 

 given counsel's failure to file a brief, and if so, 


 whether appellant is entitled to new appointed counsel.



The trial court shall cause a hearing to be transcribed. Should it be determined that
appellant does want to continue the appeal and the court determines that present counsel
should be replaced, the name, address, telephone number, and state bar number of newly-appointed counsel shall be provided to the Clerk of this Court. Finally, the trial court shall
execute findings of fact, conclusions of law, and any necessary orders it may enter
regarding the aforementioned issues and cause its findings and conclusions to be included
in a supplemental clerk's record. A supplemental record of the hearing shall also be
included in the appellate record. Finally, the trial court shall file the supplemental clerk's
record and the supplemental reporter's record with the Clerk of this Court by Friday, August
18, 2006.

 It is so ordered.


 Per Curiam

 


Do not publish.

 
1. This Court has not promulgated a local rule authorizing electronic filing. See Tex.
R. App. P. 9.2(c).



Schiffer, had Dr. Guy McKhann of Johns-Hopkins
review the program. After doing so, by letter dated January 14, 2000, Dr. McKhann
referred to Dr. Poduslo's efforts to develop the DNA databank as "herculean" and only
recommended that she collaborate with more researchers from other disciplines. The
parties differ on the details of what transpired in late 1999 and early 2000 and the record
as to that time is not fully developed. However, it is undisputed that Schiffer wrote a letter
to Poduslo "relieving her" as head of research and assuming acting directorship of the
program. Poduslo was not permitted access to the lab or to the donor charts. One month
later, Schiffer wrote to the program donors notifying them that he would act as program
director and Poduslo would "continue as an active senior investigator." In the letter, he
notified donors that TTUHSC "is committed to continuing and expanding our research
efforts."

 In a March 27, 2000 letter to Poduslo, Schiffer outlined conditions by which she
would be permitted to continue aspects of the research. Appellees alleged that sometime
in October 2000, Schiffer denied he had prevented Poduslo from obtaining replacement
consent forms, so Poduslo sent approximately 70 letters to donors concerning replacement
forms. However, by letter dated October 27, 2000, Schiffer stated that Poduslo had sent
"unauthorized letters" to donors for whom consent forms could not be found and directed
her to "stop immediately" as there was "great potential for litigation liability for unauthorized
direct correspondence."

 On December 10, 2000, Sandra Whelly, chair of the TTUHSC IRB (1) sent a letter to
Poduslo stating one protocol authorizing the research (#90068) expired on December 1,
2000, and a second protocol (#90067) would expire on December 14. In the letter, she
directed that all mailing of consent forms must occur by December 14, and all replies must
be received by January 25, 2000 [sic]. The failure to do so would require destruction of
those donors' samples.

 In the suit underlying this appeal, appellees sued Dr. Joel Kupersmith in his
capacity as dean of the TTUHSC School of Medicine and Dr. Schiffer in his capacity as
Chair of the Department of Psychiatry. Inter alia, they alleged the research project was a
charitable trust and they sought an injunction preventing TTUHSC from the "destruction
of any DNA samples, brains or medical records associated with the DNA Alzheimer's
Bank." They also sought a holding that upon "a determination that [TTUHSC] is unable
or unwilling to continue genetic based research with Dr. Poduslo as the principal
investigator," the school must return the DNA samples to those donors who no longer
wished to participate in the research. In the alternative, they requested the appointment
of a new trustee and the transfer of all DNA samples to that trustee.

 On January 12, 2001, TTUHSC filed its answer. In that answer, it asserted
numerous special exceptions, as well as affirmative defenses which included appellees'
lack of standing and its sovereign immunity. On March 6, 2001, appellant filed a petition
in intervention containing special exceptions asserting that appellant was the only proper
party to represent the interests of the public in matters involving charitable trusts. After the
case was removed to federal court and returned, appellant filed a motion to dismiss
appellees' suit for lack of jurisdiction. In his motion, appellant characterized it as a "global
plea to the jurisdiction seeking a dismissal of the Plaintiffs based on their lack of standing."
This motion was overruled by the trial court. Hence, this appeal. In pursuing his appeal,
appellant presents a single issue querying whether the trial court erred in denying his plea
to the jurisdiction of the trial court based upon appellees' lack of standing.

 Our first task is to determine whether we have jurisdiction of this interlocutory
appeal. That is true because a lack of appellate jurisdiction is fundamental error. New
York Underwriters Ins. Co. v. Sanchez, 799 S.W.2d 677, 678 (Tex. 1990). Appellees
mount a two-fold argument that this court lacks jurisdiction to consider this appeal. In
doing so, they first contend we lack jurisdiction over this appeal because it does not fall
within the limited circumstances in which interlocutory appeals are permitted under section
51.014 of the Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem. Code Ann. §
51.014 (Vernon Supp. 2001).

 Because the trial court denied appellant's motion to dismiss, we must first consider
whether subsection (a)(8) of the statute authorizes interlocutory appeals from the grant or
denial of a plea to the jurisdiction "by a governmental unit as that term is defined in Section
101.001." Under the statute, a "governmental unit" includes the state and its agencies
that constitute the government of Texas, including all departments, offices, and any organ
of government whose authority is derived from the state constitution. See Tex. Civ. Prac.
& Rem. Code Ann. §101.001(Vernon Supp. 2001). In Perry v. Del Rio, 2001 WL 893716,
(Tex. App. Austin 2001, pet. dism.), the court had occasion to thoroughly explore the
meaning of the term "governmental unit" and came to the conclusion that the governor,
lieutenant governor and the secretary of state were included in the statutory term. Id. at
pp.3-4. We agree with that holding and the court's reasoning and, in applying that
reasoning, we hold that the Attorney General is likewise a "governmental unit" within the
purview of the statute. Thus, we do have jurisdiction to consider appellant's appeal.

 Appellees also contend that a plea to the jurisdiction is not a proper procedural
device for challenging less than all the plaintiffs in a case. They reason that this is not
actually an interlocutory appeal within the purview of section 51.014(a)(8) of the Code
because, if it is determined that appellant is the only proper party, he would remain in the
case. However, appellant filed a neutral intervention petition that made no substantive
claims. If we reverse the trial court's denial of appellant's plea to the jurisdiction, the suit
would be dismissed because appellant has not asked for any substantive claims. This is
true because an intervention is subject to dismissal if it does not assert a cause or causes
of action or otherwise adopt the affirmative claims of litigating parties. See Casteel v.
Gunning, 402 S.W.2d 529, 542-543 (Tex.Civ.App.--El Paso 1966, writ ref'd n.r.e.). If no
affirmative relief is requested and the party or parties seeking affirmative relief are
dismissed, there was no claim or claims to adjudicate and, therefore no subject matter
jurisdiction. 

 We must next determine appellant's contention that appellees, the parties seeking
to invoke the jurisdiction of the trial court, lack standing to do so. It is well established that
standing is implicit in the concept of subject matter jurisdiction. See Texas Ass'n of
Business v. Texas Air Control Bd., 852 S.W.2d 440, 443 (Tex. 1993). The core of
appellant's argument on appeal is that he is the only proper party to protect the public
interest in this project which all parties characterize as being in the nature of a charitable
trust. That being so, we will refer to the project as a trust. Implicit in appellant's argument
is the assumption that the public's interest in the trust is the only interest that is affected
by this litigation. He premises that argument on the characterization that in their suit,
appellees "request a court order allowing them to control the research without interference
from Texas Tech." Bottomed on that premise, he concludes that appellees have no
standing to assert claims "in matters pertaining to how the charity operates or effectuates
its charitable mission. That is what the Donor plaintiffs want to do in this case" and neither
the consent form or any other authority allows them to exercise such control.

 However, the plain language of the relief sought by appellees in their amended
petition does not show they are trying to direct or control the research in this suit. Rather,
they allege that they provided blood and brain samples and personal medical records for
a specific research project and if TTUHSC is not going to pursue that research, or is not
going to make use of specific samples, they seek a return of those samples. (2) The only
portion of the relief sought by appellees which arguably appears to seek control of any part
of the research project is the reference to "Dr. Poduslo as the principal investigator." The
reason for this qualification seems clear, as she is the only person listed on the consent
forms as the investigator responsible for the project and to whom medical records could
be released. For this reason, and under this record, the authorities cited by appellant on
the issue of donors seeking to exercise control over the administration of a charitable trust
are not applicable. See Carroll v. City of Beaumont, 18 S.W.2d 813 (Tex.Civ.App.--Beaumont 1918, writ ref'd) (plaintiff alleged mismanagement of trust and sought
accounting); Victims v. Funds, Third Parties and Reeves County, 715 F. Supp. 178 (W.D.
Tex. 1989) (plaintiffs sought accounting of relief donations); Russel v. Yale Univ., 737 A.2d
941(Conn.App.Ct.) (donors alleged mismanagement of trust and sought to enjoin school
reorganization). 

 The existence of a public interest in a public trust does not necessarily preclude
private interests in the same trust. The distinction between public and private interests
was discussed in Carroll, in which the court used as examples of private interests in a
public trust situations in which donors were "claiming a reversionary interest by reason of
a forfeiture for the breach of the trust, the termination of the trust for some reason, such
as the heirs of the donor or someone entitled in private right to the property as a result of
a revision." Carroll, 18 S.W.2d at 819. The facts alleged by appellees here, which we
must accept as true for the purpose of determining their standing, Bybee v. Fireman's
Fund Ins. Co., 160 Tex. 429, 331 S.W.2d 910, 917 (1960), essentially allege a termination
of the trust by reason of TTUHSC's apparent decision to discontinue the research for
which the donations were made. Thus, if the trial court were to find that the evidence
justified a finding of termination of the research, and thereby termination of the trust
because of a failure of purpose, it could also find that appellees had a reversionary interest
that would support standing. Carroll, 18 S.W.2d 819. Such a disposition would be
consistent with the rule applicable to failures of express trusts, the effect of which is to
create a resulting trust in favor of the settlor. See Bogert, Trusts, section 147 (6th Ed. West
1987).

 Our required acceptance of appellees' allegation of the apparent termination of the
research and destruction of the samples is also relevant to determination of appellant's
argument that appellees do not have standing when the general rules applicable to
standing are considered. Appellant cites El Paso Community Partners v. B. & G. Sunrise
Joint Venture, 24 S.W.3d 620 (Tex.App.--Austin 1998, no writ), as enumerating the factors
to be considered in determining standing to bring a suit.

 Those factors are whether: 1) the plaintiff has sustained, or is in immediate danger
of sustaining, some direct injury as a result of the act about which complaint is made; 2)
there is a direct relationship between the alleged injury and the claim to be adjudicated;
3) the party has a personal stake in the controversy; 4) the challenged action has caused
the plaintiff some injury in fact, either economic, recreational, environmental, or otherwise;
or 5) the plaintiff is an appropriate party to assert the public interest in the matter, as well
as the plaintiff's own interest. Id. at 624.

 In challenging appellees' standing, appellant argues their only interest is in the
discovery of treatment or a cure for Alzheimer's disease. That is true as to some
appellees. For those living appellees who have provided blood samples and access to
their medical records, the destruction of those samples would cause no direct injury,
because their desire to support Alzheimer's research by providing DNA samples and
medical records would not be foreclosed by TTUHSC's decision to discontinue the
research or not to use the samples provided. It is not clear how they would be harmed by
any misrepresentation by TTUHSC about continuing the research. It appears that the only
harm those particular appellees would suffer would be to be denied the opportunity to
discover if they had a genetic predisposition to the disease. That harm would be highly
speculative in nature in that it was not established that such genetic markers were
identified in individual appellees and, even if they were, there is nothing to show that those
particular appellees could not have their DNA examined elsewhere for that purpose.

 Even so, as to those appellees who have authorized the use of blood samples from
deceased relatives or, more particularly, might have donated part or all of a deceased
relative's brain, their interest would be very different from that of the general public. The
decision by those appellees to donate those type of samples may well have been the result
of difficult personal decisions regarding the disposition of their deceased relative's
remains. The donation of such remains would also preclude participation in any other
research projects.

 Additionally, the consent forms do not purport to be integrated agreements between
the parties. Therefore, evidence of other agreements or representation could be
introduced. If that evidence should reveal that the donations were motivated by
representations concerning TTUHSC's commitment to the research and those
representations were false, those donors would have suffered direct harm as a result of
such conduct. (3) They may also be able to show that religious considerations motivated the
disposition of the brain material in a manner different from the ordinary practices of a
research university. As to those individual appellees, appellant would not be the proper
party to litigate those issues 

 We also note that the donor consent forms specifically provide donors with the right
to "discontinue my participation in this study at any time I choose," and did not specify the
effect of the donor's election to "discontinue" participation. When the evidence is more
fully developed, a factfinder might find that the participants have a reversionary interest
in the samples supplied. Such an interest would support standing. See Carroll, 18 S.W.2d
at 819.

 For the reasons we have stated, the record before us does not establish which of
appellees ground their claims on donations of decedents' blood and brain tissue. We
must, therefore, reverse the order of the trial court and remand this proceeding for further
proceedings consistent with this opinion.


 John T. Boyd

 Chief Justice


Publish.


1. The record does not reveal what the "IRB" is, other than the fact that it is
responsible for reviewing and approving research records. 
2. The specific wording of appellees' request for relief is:

 

 Upon final hearing and a determination that Defendants are unable or
unwilling to continue genetic based research with Dr. S.E. Poduslo as the
principal investigator that the Court order Defendants to return all samples
to those participants who actively withdraw their consent to further
participation in the study. . . . And that the Court further order that the
materials be returned to plaintiffs at such institution as may be designated
by Plaintiffs.


 
3. We express no opinion as to whether any agreement or representation not
expressed in the consent forms would be enforceable as to TTUHSC.